## I. & G. N. R'y Co. v. Blanton, Nunnally & Co.

(Case No. 1717.)

1. Evidence — Damages — Common carrier — Refreshing memory of witness. — Consignees of cotton required the facts connected with the condition in which cotton was received, with the extent of damage thereto, if any, and other details connected with its receipt, to be reduced to writing by their yard clerk and returned into their office, where they were copied in a book for permanent preservation and reference. In a suit against a carrier for damages, alleged to have been sustained in injury to cotton delivered to the carrier to be transported to the consignee, *held:*

   (1) That it was not necessary to call the clerk who recorded the items in the book to prove that he had correctly recorded them as they were transmitted to him by the yard clerk.

   (2) It was admissible if a witness, who knew generally the facts entered in the book of his own knowledge, could, after inspecting it, have his memory refreshed as to the entries therein and testify to their correctness.

2. Common carrier — Damages. — When a carrier who receipts for cotton states in the receipt that it was not in bad order, and it is delivered to the consignee in a damaged condition, it must be presumed that the cotton suffered the injury while under the control of the carrier. In such case there is no requirement that the owner should prove by evidence *aliunde* that the cotton was not damaged when the consignee received it.

Appeal from Rusk. Tried below before the Hon. A. J. Booty.

The plaintiffs below were Benj. F. Blanton, Charles L. Nunnally and Leander B. Cunningham, comprising the firm of Blanton, Nunnally & Co.

The petition was filed April 3, 1883.

Plaintiffs alleged that in the winter of 1880 and 1881, they had shipped from Henderson, Rusk county, by the defendant's road, a large quantity of cotton to Galveston, Texas, consigned to the firm of P. J. Willis & Bro., merchants of that city; that by the negligence of defendant that cotton had been permitted to lie upon the ground, exposed to rain and bad weather, whereby some two hundred and sixty-seven bales of it had been damaged to the amount of $10 per bale — claiming $2,670 damages.

In an amendment filed January 8, 1884, they reiterated their former allegations and claimed $250 for attorneys' fees.

July 6, 1883, defendant answered by a general demurrer, general denial and plea of not guilty.

Amended answer, filed January 7, 1884, alleging that if the cotton was damaged at all, the damage occurred before defendant received it, or after it had delivered the cotton to P. J. Willis & Bro., the consignees; that if defendant had receipted for the cotton as being in good order, it was only in apparent good order, and that

defendant had delivered it to the consignees in the same condition as it was when received by it; that the consignees had received the cotton from defendant, and had deposited it in a close brick warehouse, where it was liable to further damage, but had never notified defendant of any damage to the cotton, whereupon it claimed that plaintiff was estopped to claim damages of defendant.

Judgment for plaintiffs for $2,666.96 damages, and $200 attorneys' fees.

On the trial the plaintiffs introduced (with the testimony of witnesses) a sort of tabulated statement from the books of P. J. Willis & Bro., showing the amount of damage to each bale of cotton. In this connection, P. J. Willis, of the firm of P. J. Willis & Bro., testified that "he knew the damaged cotton from observation at the time of receipt, and further from the public weigher's rejecting such as was unmerchantable at the time of weighing. I see the cotton when it arrives at the yard, and when it is rejected by the weigher. I have charge of the cotton yard of P. J. Willis & Bro., and of all cotton received by them. I made the report of damage.

"The report of sales is made in our cotton office by cotton clerks. W. S. Beadle made 'Exhibit A.'

"I know of the damage, from the fact that we mark on our samples and on our receipts the condition of the cotton when received and sampled. This goes to our office, where a record is kept of the same. I know now of all these things from the record made at the time the cotton was received, sampled and weighed. The amount of damage was determined when rejected by the public weigher, by sending the bales to the pickery, where each band is cut off and the damaged cotton taken therefrom. The bale is then returned to the public weigher, who weighs the same and ascertains the loss," etc.

R. Johnson testified as follows: Was cotton clerk of P. J. Willis & Bro. Exhibit "A" was made out by W. S. Beadle, cotton book-keeper of P. J. Willis & Bro., from statements made by our yard clerk and the public cotton weigher.

J. A. Zeigler testified: Was head yard clerk of P. J. Willis & Bro. in 1881–82. Received all cotton consigned to the firm. Received about twelve hundred and twenty bales from plaintiff. All the bales described in Exhibit "A" were received in wet and damaged condition, and were picked under the supervision of witness. Exhibit "A" is made up from the weight books and pickery books, which are kept in witness's department, and is correct to the best of his knowledge and belief.

The exhibit was read to the jury over the objections of defendant.

*Jones & Gould,* for appellants, cited:  Cowan & Hill's notes to Phillips on Ev., pp. 756, 757; Acts of Legislature of Texas, 1883, p. 69, sec. 8; Hutchinson on Carriers, top of pages 589 and 95, § 123.

*Field, Bagly & Spivy,* for appellees, cited:  6 Tex., 41; 56 Tex., 508; 54 Tex., 500; 53 Tex., 206; 61 Tex., 238.

Delany, J. Com. App.— The first, second and third assignments of error may be considered together.  They complain of the ruling of the court in admitting in evidence Exhibit " A," and the depositions of the witnesses Willis and Zeigler.

The exhibit was not introduced because it was supposed to be competent evidence, by itself alone, of any particular fact.  The plaintiffs did not propose to show by the exhibit either that the cotton had come to the hands of the defendant or that it had been damaged.  These facts they proved by appropriate testimony.

They proved by the bills of lading that the defendant had received the cotton.

They proved by the witnesses P. J. Willis and Zeigler that when the cotton came to the hands of the consignees a considerable part of it was damaged.

These facts they well understood from their personal knowledge; they had received the cotton from the defendant's cars; had seen the damaged bales rejected by the public weigher.  They had removed these damaged bales to the pickery belonging to the firm, where, under their supervision, the bales were opened, the damaged cotton removed, and the sound cotton re-baled.  They then caused it to be taken to the public weigher, where they saw it re-weighed, the difference in the weight indicating the loss on each bale.

Certainly they were competent witnesses to prove these facts. But, as no man could possibly retain in his memory all the infinite details of a business like this, the firm require all these minutiæ to be reduced to writing by a yard clerk (in this case the witness Zeigler) and returned into the office, where they are copied into a book and thus preserved in a permanent form.

A copy from this book does not of itself prove the facts recorded there; but it enables the witness who has transacted the business to recall all the details of the transaction.  And it is not necessary that the witness should himself have made the entries in the book, if he knows from the general course of the business that the books are correctly kept.

"It does not seem necessary," says Greenleaf, "that the writing should have been made by the witness himself, nor that it should be an original writing, provided, after inspecting it, he can speak to the facts from his own recollection." 1 Greenl. on Ev., sec. 436.

Note 2, to the same section, is as follows: "In all cases where accounts are multitudinous, the rule as to personal knowledge is relaxed. He (the witness) must be permitted to put the items into an account, and to refresh his recollection by means of other accounts and papers as to the items. In a long account of sales a party rarely recollects all the items, but he can be perfectly certain from his mode of business, on finding the entries in his books, that the charges were correctly made."

In our opinion the evidence was admissible; and it was not necessary, as the case is here presented, to call the clerk who recorded the items in the book, to prove that he had correctly recorded them as they were transmitted to him by the witness Zeigler.

In the second assignment objection is made to the testimony of the witness Willis on the further ground that he did not "pretend to know when or how, or in whose possession, the cotton was damaged." Nor was he introduced to prove any of these facts, but simply to show the condition of the cotton when he received it.

The fourth and fifth assignments need not be noticed. The sixth is as follows:

"The court erred in not charging the jury that the proof must show, beyond doubt, that the cotton was damaged while in the possession and under the control of the defendant before the plaintiffs could recover."

This is the substance of the charge asked by the defendant, but not given.

The court, among other charges, gave the following:

"You are further instructed that if the defendant gave its receipt for the cotton, stating therein that it was not in bad order, the presumption arises that it was in good condition when shipped or received for shipment. And if the same arrived in the city of Galveston in a damaged condition, the presumption arises that the said cotton suffered the injury while in the hands of the company; and, *prima facie*, the defendant is liable for the lessened value of said cotton by reason of said injury."

This charge, we think, presented the correct view of the case.

Counsel for appellant, however, seem to suppose that the plaintiffs ought to have proven, by evidence other than the bill of lading, that the cotton was not damaged when the defendant received it.

In this we cannot agree with them, and, as the defendant offered no evidence of the condition of the cotton at the date of the bill of lading, it does not become necessary for us to pursue the subject further.

The judgment should be affirmed.

AFFIRMED.

[Opinion adopted January 23, 1885.]