THE KANSAS CITY SOUTHERN RAILWAY COMPANY *v.* SHULL.

4-5762                                    136 S. W. 2d 1040

Opinion delivered February 5, 1940.

*James B. McDonough* and *Joseph R. Brown,* for appellant.

*E. K. Edwards,* for appellee.

MEHAFFY, J. This action was begun in the Sevier circuit court by appellees against the appellant to recover damages for a car load of cucumbers which it is alleged were delivered to the carrier at De Queen, Arkansas, on June 15, 1936, in first class condition, and when the car arrived at its destination, the cucumbers were in a damaged condition, had become soft, bruised, overripe and rotten, and had so deteriorated they had greatly depreciated in value, and after selling said car of cucumbers at their market value in Milwaukee, appellees suffered a loss of $424.69; that there were 463 bushels of cucumbers delivered to appellant at DeQueen to be carried by appellant to Chicago, Illinois. The appellant issued its bill of lading, and undertook to transport said cucumbers to Chicago, Illinois. On June 18, 1936, at request of appellees, the appellant diverted said car of cucumbers from Chicago, Illinois, to Milwaukee, Wisconsin, and at 4:15 p. m. on June 20, 1936, appellees again directed appellant to divert said shipment of cucumbers from Milwaukee to Morris Fruit & Produce Company at Minneapolis, Minnesota, and to put 3,000 pounds of ice in each bunker of said car; but that appellant failed and neglected to move said car from Milwaukee to Minneapolis, and failed and neglected to put any ice in the bunkers of said car, and the appellees learned on June 22, 1936, through their agents at Milwaukee, that appellant had not diverted said car, and had not put ice in the bunkers of said car, and that the cucumbers were becoming yellow, soft at the ends, and fast decaying, and depreciating in quality and value, and canceled their order to divert and move said car from Milwaukee to Minneapolis, and directed C. H. Robinson Company at Milwaukee to unload and sell said cucumbers at the best obtainable price on the market at Milwaukee, and this was done by said Robinson Company. Appellees alleged that said load of cucumbers were damaged and injured while in the course of transportation, so that when unloaded and offered for sale on the market at Milwaukee, they had so deteriorated that they had greatly depreciated in value, and after selling them for their market value

in Milwaukee, appellees were damaged in the sum of $424.69. It was alleged there was an unreasonable and unlawful delay in .diverting said car and that appellant was negligent in failing to divert said car as directed on June 20th and in failing to put 3,000 pounds of ice in each bunker of said car. If the appellant had diverted said shipment and moved same from Chicago to Milwaukee without unreasonable delay the car would have. reached Milwaukee in time for the market on June 19th, when appellees could have sold them at $1.00 per bushel.

Appellant filed answer denying each and every material allegation in appellees' complaint, and further answered stating that if said cucumbers were in a damaged condition when delivered in Minneapolis, said condition was due to the inherent quality of said cucumbers, and to the fact that they were becoming yellow and soft, at the ends, and fast decaying and .depreciating in quality and value when shipped by appellees; that if said cucumbers were in a damaged condition when delivered, it was not due to the improper handling or any fault on appellant's part or to any fault of the connecting carriers, but was due solely to the fault of appellees.

Thereafter appellees filed an amendment to the complaint, striking from their original complaint all of paragraphs five and six, and striking all allegations which charged appellant and its connecting carriers with specific acts of negligence, except allegations set out in paragraph three of the complaint. They further amended their complaint by striking therefrom paragraph four and substituting the following:

"Plaintiffs allege that said defendant, Kansas City Southern Railway Co., and its connecting common carriers, allowed and permitted said car of cucumbers, while in their possession and in the course of transportation, to become bruised, yellow, over-ripe, rotten, and otherwise deteriorated, thereby greatly depreciating the market value of said cucumbers, all to plaintiffs' damage in the sum of $424.69."

The evidence tended to show that the cucumbers were shipped on June 15, 1936, and the uniform bill of lading

named appellees as consignors and Robinson Company, Chicago, consignee. It specified 416 bushels of cucumbers were placed in car N. R. C. 9947 and requested only initial icing, with plugs out and vents open. There was printed on the reverse side of the bill of lading that the carrier shall be liable, as at common law, for loss or damage except that resulting from an act of God, or act or default of the shipper, or for natural shrinkage. Carriers are not liable for damage while property is stopped by shipper or owner, or for damage resulting from the vice in the property.

The car was diverted, as shown on bill of lading, to C. H. Robinson Company, Milwaukee, Wisconsin, on June 18th. The car was again diverted from Milwaukee to Minneapolis at 4:25 p. m. June 20th. The car was loaded by Hoogler and Durham who assisted in grading the cucumbers. They were in good condition when loaded. The car contained 462 bushels. Appellees sold the car while they were on the track in Milwaukee for $1. per bushel f. o. b. DeQueen. The sale order to Morris Fruit Company, Minneapolis, was introduced in evidence, and witnesses testified that the car was diverted and railroad requested to ice the bunkers. The car was ordered diverted on Saturday afternoon, June 20th at 4 p. m. Wire was received by the shipper from C. H. Robinson that the car had not been diverted or iced and thereupon appellees authorized Robinson to sell the car in Milwaukee. Appellees paid $257.42 freight. Chicago is 84 miles from Milwaukee. Appellees had been shipping vegetables and cucumbers since 1922. The first diversion order was filed June 18th at 6 p. m. at DeQueen. Appellees did not have the car sold when it left DeQueen. They sold it on June 20th after it arrived at Milwaukee to Morris & Company at Minneapolis. The car was iced June 15th at DeQueen, the day it was loaded. Testimony showed that the cucumbers were in good condition, as good as were shipped through the season; good, green cucumbers. They were placed in baskets the day they were shipped; it took one day to load the car. Witnesses testified that they had been shipping fruits and vege-

tables for years, and that shipments to Milwaukee ordinarily reached there in good condition with only the original icing. When the cucumbers were sold, the shippers realized $67.31. The ice bunkers were empty. The evidence tended to show that prime, firm, green cucumbers in Milwaukee from June 18th to June 20th sold for around $1.55 to $1.65 per bushel. Evidence showed that the cucumbers in the car at Milwaukee were very much damaged.

Appellant introduced testimony about the orders to divert the car, and evidence tending to show that it was not guilty of negligence, and it also showed that on June 20th they received an order to divert the car, and to add 3,000 pounds of ice to each bunker. Appellant's witness, Kowitz, testified that he was the perishable fruit inspector in Chicago in June, 1936; he inspected the car in question on June 18, 1936, at 9:10 a. m.; his report showed that the bunkers were dry; that 11 bushels in "A" end of the car tipped and stuck next to "B" end of the car and jammed; the cucumbers were at that time in damaged condition.

A jury was waived and the case was tried before the circuit judge sitting as a jury, and judgment was rendered for the appellees in the sum of $424.69. The case is here on appeal.

The appellant requested certain findings of fact and conclusions of law, which were denied by the court.

Appellees were permitted to file an amendment to their complaint, and the court held that when this motion was granted appellant moved for a continuance, insisting that the effect of appellees' amendment was an elimination of the specific acts of negligence charged in the original complaint, and the conversion of the action into one based upon appellant's common law liability, and that appellant should, therefore, have time to meet the changed nature of the action. Appellees agreed to appellant's construction of the intent and purpose of the amendment, and appellant's motion for a continuance was granted.

. The court further held that the trial proceeded without objection or comment as to the nature of the action on the theory, on the part of the court at least, of appellant's common law liability. The court stated that since the trial the appellant contends that it was an action *ex contractu* rather than one in *tort* based upon its common law liability as a carrier. The court further said: "Since no objection was made to the character of the action until after trial, the issues will be determined and the pleadings construed in the light of the construction which the parties placed upon them."

The court further held: "The evidence shows that the cukes were sold in Milwaukee by the shipper's agent as peddlers' stock and netted $37.31 after payment of transportation charges. It is also shown that the cukes had been sold by plaintiffs for $1 per bushel f. o. b. DeQueen, and this price seems to be in line with the market value of cucumbers of like character and quality of those involved, from the testimony. Plaintiffs have, therefore, been damaged in the sum of $424.69. Judgment will be entered for the plaintiffs for said sum together with their costs."

When appellees were granted permission to amend their complaint, and did amend it, a continuance was granted to appellant because it claimed that the amendment changed the complaint from an action *ex contractu* to an action *ex delicto,* that is to an action on the common law liability of appellant. Thereafter the parties and the court considered and treated it as an action on the common law liability of the carrier.

It is then contended by the appellant that the appellees failed to prove a case against the appellant. The undisputed proof shows that the cucumbers were in good condition when delivered to the carrier on June 15th, and some of appellant's own witnesses testify that on June 18th at 9:10 a. m. the bunkers were dry and the baskets shifted, and the cucumbers were damaged.

But appellant says that appellees charged specific acts of negligence. As we have already said, the parties

themselves treated the complaint as stating a cause of action under the common law liability of the carrier.

The Supreme Court of Georgia said: "If a contract imposes a legal duty upon a person, the negiect of that duty is a *tort* founded upon a contract. In such a case the liability arises out of a breach of duty incident to and created by the contract, but is only dependent upon the contract to the extent necessary to raise the duty. The *tort* consists in the breach of duty." *Ellis* v. *Taylor*, 172 Ga. 830, 159 S. E. 266.

Wherever an interstate shipment is delivered to a carrier in good condition and the goods arrive at their destination in a damaged condition, or fail to arrive at all, the burden of proof is on the carrier to show that the loss resulted from some cause for which the initial carrier was not responsible in law.

"The burden of proof that the loss resulted from some cause for which the initial carrier was not responsible in law or by contract was then cast upon carrier. The plaintiffs were not obliged both to prove their case and to disprove the existence of a defense. The carrier and its agents, having received possession of the goods, were charged with the duty of delivering them, or explaining why that had not been done. This must be so, because carriers not only have better means, but often the only means of making such proof. If the failure to deliver was due to the act of God, the public enemy or some cause against which it might lawfully contract, it was for the carrier to bring itself within such exception." *Galveston, H. & S. A. Ry. Co.* v. *Wallace,* 233 U. S. 481, 32 S. Ct. 205, 56 L. Ed. 516.

The undisputed proof in this case shows that the goods were in good condition when delivered to the carrier and in a damaged condition at the destination. While the burden was upon appellees to make out their cause of action, when they have once shown that appellant received the shipment in good condition and issued its bill of lading for the shipment, consigned to some person in another state, the relation of common carrier was shown, and burden shifted to appellant to show that the

damage did not result because of its negligence. *St. L., I. Mt. & So. Ry. Co.* v. *Cunningham Comm. Co.*, 125 Ark. 577, 188 S. W. 1177.

Appellant next contends that it disproved negligence. The trial court found that it was guilty of negligence, and there was substantial evidence, as set out above, to sustain the finding. When a case is submitted to the court sitting as a jury, his finding on facts has the same effect as the finding of a jury.

In this case, as we have already said, the undisputed proof shows the delivery of the goods to the carrier in good condition. It also shows that the goods arrived at the destination in a damaged condition. The evidence shows that when the car was inspected on the morning of June 18th, the bunkers were dry; that the baskets had shifted and were damaged in that way, and the appellant gives no explanation for that. The evidence shows that the shipper had a sale for the cucumbers for $1 per bushel, plus freight. They were not sold before shipment, but they were sold after the goods were shipped. The measure of damages is the difference between the price for which they were sold and the price actually received on the market.

We find no error, and the judgment is affirmed.