**ELECTRO–HYDRAULICS CORPORATION OF AMERICA, Appellant,**

v.

**SPECIAL EQUIPMENT ENGINEERS, INC., Appellee.**

**No. 4552.**

Court of Civil Appeals of Texas.

Waco.

Jan. 26, 1967.

Rehearing Denied Feb. 16, 1967.

Cook & Hobbs, Fort Worth, for appellant.

Vinson, Elkins, Weems & Searls, Ross N. Sterling, Houston, for appellee.

OPINION

TIREY, Justice.

This suit was brought by the Special Equipment Engineers, Inc., on a written contract against the Electro-Hydraulics Corporation of America, to recover the balance which plaintiff claimed was owed by the defendant on the contract for design and construction by it of some special equipment. Plaintiff went to trial on its First Amended Original Petition. It is in two counts. The first count is for the damages it claims it sustained by reason of breach of the contract sued upon, and for defendant's wrongful conversion of certain property of plaintiff. The court refused to hear any evidence with regard to the conversion count so here we are concerned only with the allegations in count two. Count two is in the nature of an accounting under the breach of the contract, and plaintiff made affidavit to its pleading. Attached to the pleading is the contract in suit and exhibits A, B, and C, which were made a part of the pleading. Defendant went to trial in its First Amended Original Answer and counterclaim, and this pleading contained a general denial and suit for damages for breach of contract by plaintiff and sought damages in the sum of $21,240.00 on its counterclaim. Plaintiff entered a general denial to the defendant's counterclaim. The cause was tried without the aid of a jury, and the court found in favor of plaintiff in the sum of $6,044.-72 and interest and costs, and further found that plaintiff was entitled to recover attorney's fees in the sum of $1815.00, and for costs and denied defendant any relief on its counterclaim. At plaintiff's request the court filed Findings of Fact and Con-

clusions of Law. We qoute the pertinent parts:

## "FINDINGS OF FACT

"1. On or about September 20, 1963, plaintiff and defendant, both of which are private corporations duly incorporated under the laws of the State of Texas, entered into a written agreement embodied in plaintiff's Proposal No. 1, dated August 20, 1963, and defendant's Purchase Order No. 5752, dated September 20, 1963, both of which documents are in evidence, by the terms of which plaintiff agreed to design and manufacture or have manufactured certain machinery more fully described in the contract documents, and defendant agreed to pay plaintiff $28,328.00 upon delivery of such machinery to defendant in Fort Worth, Texas, and its assembly, testing, and acceptance by the defendant.

"2. Certain changes in the machinery contemplated were agreed upon by plaintiff and defendant and, subsequently, the finally agreed upon purchase price therefor was settled at $28,767.50.

"3. Plaintiff proceeded to prepare drawings of the machinery contemplated by the contract and on or about October 17, 1963, defendant approved the drawings with some change.

"4. After approval of the drawings by defendant, plaintiff proceeded to procure the materials necessary for the construction of the contemplated machinery. Delays were encountered in the procurement of the materials required, which extended the time of completion of performance by plaintiff beyond the period of the contract. These dalays, however, were not occasioned by any act or omission by plaintiff but were the result of failure by defendant to make timely payments as required by the contract.

"5. During the course of procurement of materials for the machinery by plaintiff, plaintiff was paid by defendant a total of $26,068.63.

"6. The contract provides that plaintiff would furnish the services of an engineer for the supervision of erection of the machine in the plant of defendant in Fort Worth, Texas, at a rate of $100.00 per day and expenses. Plaintiff furnished the services of such an engineer who did supervise the assembly and erection of the machine as required by the contract.

"7. The engineer supervising erection of the machine worked 59 days and incurred $958.00 living and travel expenses in the performance of the contract. During this period of time, delays in assembly and erection of the machinery were incurred which were not the fault of defendant. Charges for the services and expenses of the engineer supervising erection and assembly of the machinery during these delays are in the amount of $2,798.00.

"8. The erection and assembly of the machine was completed or substantially completed on or about May 23, 1964, and on that date, the engineer supervising erection of the machine returned to Houston from Fort Worth.

"9. The contract provides that after completion of assembly and erection of the machine there would be an acceptance test witnessed by representatives of plaintiff and defendant and that upon acceptance of the machine by defendant all amounts due under the contract would be payable in cash.

"10. On or about May 25, 1964, the president of defendant requested that the president of plaintiff be present in Fort Worth for acceptance tests of the machine on May 27, 1964. Plaintiff's president informed defendant that he would not be available for such tests until May 29, 1964.

"11. On or about May 27, 1964, plaintiff received notice that defendant intended to ship the machinery to England without conducting the acceptance tests contemplated by the contract.

"12. Over the written protest of the plaintiff, defendant did immediately there-

after sell and ship the machinery to a purchaser in England and thereby prevented the conducting of acceptance tests as contemplated by the contract and precluding plaintiff from an opportunity to rectify any defects in the machinery claimed by defendant.

"13. Thereafter, plaintiff, on numerous occasions, rendered statements to defendant for the amounts claimed to be due under the contract, i. e., balance due upon acceptance of the machinery, $2,698.87; services and expenses of engineer supervising erection, $6,858.00; less credit for materials purchased by defendant in the amount of $714.15. Demand for the amount thus claimed to be due and owing of $8,-842.72 was made by plaintiff in writing, more than 30 days prior to the institution of this suit and no part thereof was paid by defendant.

"14. It became necessary that plaintiff employ an attorney to enforce its claim under the contract and a reasonable attorney's fee in this action would be $1,-815.00.

## "CONCLUSIONS OF LAW

"1. Plaintiff performed or substantially performed its contract with defendant so as to become entitled to all amounts due under such contract.

"2. Defendant breached its contract with plaintiff in failing to conduct acceptance tests as contemplated thereby and in failing to pay plaintiff the amounts due thereunder.

"3. By its acts, defendant accepted the performance or substantial performance of plaintiff in designing and constructing and supervising the erection of the machine contemplated by the contract.

"4. Defendant is indebted to plaintiff in the amount due under the contract i. e., $8,842.72, less the amount charged for services of the engineer supervising erection during delays in assembly and erection not

caused by defendant, i. e., $2,798.00, or $6,044.72 with interest thereon at six percent (6%) per annum from May 27, 1964, plus a reasonable attorney's fee of $1,815.-00."

Appellant assails the judgment on 7 points. They are substantially to the effect that the Court erred:

(1, 2 and 4) In rendering judgment in favor of appellee for the full amount of the contract price without making a finding of fact that appellee had designed and constructed the equipment in accordance with the specifications of the contract; because the evidence showed conclusively that the equipment was not in fact designed and constructed in accordance with the specifications of the contract; and because there is no evidence and no finding of fact of waiver by appellant of the defects in design and construction of the equipment.

(3) In excluding from evidence defendant's Exhibit No. 9, which was a letter showing that appellant did not waive the defects in design and construction of the equipment.

(5) In making Finding of Fact No. 12 to the effect that defendant's shipping of the machinery to its customer prevented the conducting of acceptance tests as contemplated by the contract, because the undisputed evidence shows conclusively that the acceptance tests were in fact conducted.

(6) In making its Conclusion of Law No. 2 to the effect that the defendant breached the contract in failing to conduct acceptance tests as contemplated by the contract, because all of the evidence shows conclusively that such acceptance tests were in fact conducted.

(7) In making its Conclusion of Law No. 3 to the effect that appellant accepted the machine as designed and constructed by appellee, because there is no finding of fact to support such conclusion of law, and the evidence clearly shows that appellant did not in fact accept the machinery.

We overrule each of the foregoing points and affirm the judgment of the trial court for reasons hereinafter briefly stated.

Since this action is based on a written contract between the parties and written exhibits in connection therewith, we are of the view that appellant's points present only two major contentions. The first one is: That plaintiff did not perform its contract, and the second one is that defendant did not accept the performance of the contract by plaintiff with an ancillary point on exclusion of part of a letter written by defendant to plaintiff. These contentions necessarily require a very careful examination of the statement of facts, the contract between the parties, and the exhibits tendered in evidence. So, the question here presented to us is: Does the evidence tendered support the findings of the trial court to the effect that plaintiff did substantially perform the obligations imposed upon it by the contract, and did the defendant accept such performance? We think it does. In appellant's brief we find this statement:

"The record in this case is conclusive to the effect that the machinery was faulty in design and defective in construction in many substantial respects and was not designed and built in accordance with the specifications of the contract. Appellee through its engineer and President David O'Connor admitted the following defects in design and construction of this equipment:

"1. The mechanism which pushed the end plates in against the material being worked was designed so as to cause excessive stress and breaking of the bearing plates.

"2. The automatic filament feed did not function satisfactorily, and consequently did not satisfy Specifications Nos. 13, 14 and 18 of the contract.

"3. The equipment would not form tubular blanks within the time specified by the contract, and consequently did not meet Specification No. 17 of the contract.

"4. The machinery would sometimes form flat blanks within the time required by the contract and sometimes it would not, and consequently it failed to meet Specification No. 16.

"5. The end plug mechanism would stick and fail to operate properly, and therefore the machinery failed to meet Specification No. 18 of the contract.

"6. The design was faulty for the assembly of dies, and consequently failed to comply with Specification No. 1 of the contract.

"7. The equipment was faulty in design in that limit switches were inaccessible and could not be reached for adjustments.

"8. The machinery was faulty in design in that the hydraulic lines were inaccessible and leaked considerably and it was impossible to obtain access to the plumbing to stop the leaks.

"9. The design was faulty in that the electrode adjustment was difficult to make, and consequently the machinery did not satisfy Specification No. 13 of the contract."

Needless to state that the foregoing contentions required us to consider the testimony of the witnesses most carefully, and this we have done, and it is our view that there is no admission by the witness, O'Connor, nor of plaintiff of any defect or lack of compliance with the specifications. His testimony consists of almost 80 pages in the statement of facts, and it is in detail of the work done by the plaintiff in the performance of its contract. He testified specifically that plaintiff had designed and built the required machinery in accordance with the contract and the court believed his testimony. Since the trial judge was the trier of the facts it was in his province, and it was certainly his duty to take into

consideration all the facts and surrounding circumstances in connection with the testimony of each of the witnesses tendered, and to arrive at his conclusion as to the facts controlling this case. In so doing, he had a right to accept or reject all or any part of the testimony of the witness tendered. Hood v. Texas Indemnity Insurance Company, 146 Tex. 522, 209 S.W.2d 345, points (1–3), Supreme Court, February 1948. We think the evidence is ample to sustain each of the findings made by the trial court. In appellant's brief we find this statement:

"We are unable to understand how the Honorable Trial Court made the determination set forth in its Conclusion of Law No. 3 to the effect that appellant 'accepted the performance or substantial performance' of appellee. There is no finding of fact to support this conclusion of law. 'Waiver' is a fact issue, and 'acceptance' is a fact issue. The Honorable Trial Court has failed to make a finding of fact in support of either defense to appellant's counterclaim. With all of the evidence in the record being contrary to appellee's position on 'waiver' and 'acceptance' it would have been impossible for the Honorable Trial Court to make a finding of fact favorable to appellee on either of these issues."

We are certainly not in accord with the above contention. In McAshan v. Cavitt, 149 Tex. 147, 229 S.W.2d 1016, Supreme Court 1950, we find this statement: "The designation is not controlling, and looking to all of the findings and conclusions we may consider this conclusion a finding of fact." As we understand our Supreme Court in the foregoing case, whether the Trial Court's holding here be considered Findings of Fact or Conclusions of Law, the detail findings of fact here include every element of fact leading to a finding or conclusion of performance. That leads us to say that even if a presumption were required to fill the gap, such presumption would be required in favor of sustaining the trial court. See Rule 299 Texas Rules

of Civil Procedure. Each of appellant's points has been considered and each is overruled.

The judgment of the trial court is affirmed.