RED LINE TRANSFER & STORAGE CO. *v.*
CASH & SONS L-P GAS Co. AND HURLEY
FURNITURE & HARDWARE CO., INC.

5-5651                                                472 S.W. 2d 705

Opinion delivered November 15, 1971

*Dickey, Dickey & Drake,* for appellant.

*Huey & Vittitow,* for appellees.

J. FRED JONES, Justice. Cash & Sons L-P Gas Company and Hurley Furniture & Hardware Co., Inc., hereafter referred to as "Cash" and "Hurley," own and operate retail stores in Warren, Arkansas. Red Line Transfer & Storage Company, hereafter referred to as "Red Line," is a common carrier of freight by motor truck and services the Warren area. Cash and Hurley filed separate suits against Red Line in the Bradley County Circuit Court alleging damage in transit to a washing machine purchased in Little Rock by Cash and a gas range purchased in Cleveland, Tennessee, by Hurley and delivered to their places of business in Warren by Red Line. A consolidated trial of the cases before the judge, sitting as a jury, resulted in judgments against Red Line for $164 in favor of Cash and for $117.98 in favor of Hurley.

On appeal to this court Red Line relies on two points. It contends that Cash and Hurley failed to prove that the washing machine and range were in good condition when delivered to Red Line, and it contends that they failed to prove that the articles were in a damaged condition when delivered to them by Red Line.

Cash submitted evidence that three washing machines were delivered to its store in Warren by Red Line; that the shipment originated in Little Rock and the machines were concealed in cardboard boxes or cartons. The testimony is to the effect that there was no damage to one of the machines, but the cardboard carton on one of them was broken and a scratched place was plainly visible on the machine at the time it was delivered in Warren. A notation of that fact was made on the delivery ticket and damages in the amount of $15 were subsequently paid on this machine by Red Line. Mr. O. S. Cash, as well as his son, Bruce, testified that the cardboard carton containing the third machine was caved-in on top, and that upon removal of the carton and examination of its contents soon after delivery, it

was found that this machine had sustained extensive and irreparable damage to the controls on the back of the machine.

Mr. Bruce Cash, the store manager, testified that he was in and out of the store during the day the washing machines were delivered but that he does not recall whether he observed or assisted in the actual process of unloading this particular shipment or not. He testified that he did uncrate the washer on the same day it was delivered and found that it was damaged beyond repair.

At this point Cash rested its case and Red Line moved for a directed verdict on the ground that there was no proof that the washing machine was delivered to Red Line in good condition and delivered to Cash in a damaged condition. The motion was denied by the trial court, whereupon Hurley proceeded with its evidence.

Mr. Terral Wallace, manager of Hurley, testified that he ordered a gas range from the seller in Cleveland, Tennessee, and that it was delivered to the Hurley Store in Warren by Red Line. He testified that the range was concealed in a crate or carton when it was delivered and that it was inspected by his assistant manager, Mr. Leroy Thornton, who signed the freight bill indicating that no defect was noticed on the carton at that time. He testified that on the day following delivery, when the crates were opened by the warehouse men, the damage to the range was first discovered. Mr. Wallace testified that the frame of the range had been bent until it could not be repaired to a safe and saleable condition, and that it appeared to have been dropped from a height landing on its left front corner. A copy of a freight bill was placed in evidence as an exhibit to Wallace's testimony. It showed delivery of one gas and one electric range, and was signed by Leroy Thornton under the printed form statement "above shipment received in good condition."

Mr. Wallace testified that on many previous occasions he had reported "concealed damages" to Red Line

and the claims were paid. He testified that he was not present at the Hurley warehouse when the range was delivered, but that when he inspected it the day following delivery, there was no apparent damage to crate or carton and that he only discovered the damage to the range after the crate was removed. Mr. Wallace testified that it was his understanding the range was shipped by rail from Cleveland to Memphis, Tennessee, and was picked up by Red Line in Memphis. He says that he has no way of knowing what happened to the range in transit.

At this point Hurley rested its case and Red Line moved for a directed verdict on the ground that there was no proof that the range was delivered to Red Line in good condition and delivered to Hurley in a damaged condition. The motion was denied, whereupon Red Line proceeded with its evidence.

Mr. Presson, manager of the claims department for Red Line, testified that the freight bill on the washers delivered to Cash bore a notation "1 washer damaged," and that this damage was paid in the amount of $15.00. He testified that a claim for "concealed damage" discovered after delivery was presented by Cash on another washer and that this claim was denied because he felt that if damage to one washer in the amount of $15.00 could be discovered and noted on the freight bill, then certainly the claimed damage to the other washer amounting to total loss could have been discovered and so noted on the freight bill.

At this point Red Line introduced as exhibit 1 to Mr. Presson's testimony, a delivery receipt or freight bill bearing the notation: "1 washer damaged." This exhibit was signed by the office secretary of Cash under the printed form words, "The above shipment received in good condition." Mr. Presson then testified on cross-examination as follows:

"BY MR. HUEY:

Q. Mr. Presson, what condition was the washer in in Little Rock when Red Line picked them up?

A. From the bill of lading contract, apparently in good order.

Q. Then if something happened to it, it happened from the time it left Little Rock until it got delivered here in Warren?

A. Not necessarily. We delivered it in apparent good order, in the same condition which we received it.

Q. Do you have any evidence that damage occurred to this machine at any place other than while it was in transit prior to the point of delivery to Mr. Cash? You investigated this pretty thoroughly?

A. I investigated it and have no factual evidence that it was and no factual evidence that it was on delivery to Mr. Cash [sic].

Q. Have you seen this merchandise?

A. I have not.

Q. Then you don't know if its damaged yet?

A. I do not, only from the records."

This witness further testified that when Red Line executes a bill of lading it seals the contract of carriage between the shipper and Red Line. He says that as a general rule, a Red Line truckdriver inspects the articles to be transported when he picks them up, and if there are any visible signs of damage he will note same on the bill of lading, but that the driver has no authority to examine contents of packages for a determination of damage. He testified that as a matter of practice Red Line asks the merchant to whom delivery is made not to hold up the drivers while cartons are opened and the contents examined unless there is apparent damage to the carton. He says that in instances where the receiving merchant can see that a carton has been damaged, he

may request the driver to open the carton or package for examination and that under such circumstances Red Line permits this to be done.

As to the Hurley claim, Mr. Presson testified as fol-lows:

"Q. Mr. Presson, there is testimony in this case that Mr. Wallace said the case was in apparent good shape. Now, would your testimony be the same as in the other case I believe, that this was apparently picked up in Memphis and was in apparent good order when it was picked up there in Memphis?

A. This particular shipment, Mr. Vittitow, was picked up in Cleveland, Tennessee, and trans-ferred to Red Line at Memphis.

Q. That's what I'm speaking of, that on pass-ing between the two carriers it apparently was in good order. You stated to Mr. Huey's ques-tion that you ask the merchants not to open the crates as soon as they are delivered and hold up your driver unless there is an appar-ent defect of the crate, damage to the crate itself.

A. No, sir, what I think J said was, that the mer-chandise doesn't belong to the consignee until such time as he receipts our delivery receipt for it, he has no right to open it."

We are of the opinion that there was sufficient com-petent evidence to sustain the judgment of the trial court in favor of Cash, but we are of the opinion that there was not sufficient competent evidence to sustain the judgment in favor of Hurley.

We agree with the appellant, Red Line, that to es-tablish a *prima facie* case of liability for damage to goods shipped by common carrier, the plaintiff must prove that the goods were delivered *to* the carrier in

good condition and delivered *by* the carrier in a damaged condition. But once these two points are established, a presumption of negligence on the part of the carrier arises and in order to avoid liability, the carrier is required to go forward and show by a preponderance of the evidence that the damaged condition was not the result of its negligence. *Ry. Express Agency, Inc.* v. *Shull*, 224 Ark. 476, 275 S. W. 2d 882; *Kansas City So. Ry. Co.* v. *Shull*, 199 Ark. 932, 136 S. W. 2d 1040; 14 Am. Jur. 2d, Carriers, § 618. See also *American Ry. Express Co.* v. *Rouw Co.*, 173 Ark. 810, 294 S. W. 401 and cases there cited. See also 13 C. J. S., Carriers § 254 (j) (2).

As to Red Line's first point for reversal, as related to the judgment in favor of Cash, the deficiency in the evidence submitted by Cash, was satisfied by the testimony of Mr. Presson, the manager of Red Line's claims department, when he testified as follows:

"Q. Mr. Presson, what condition was the washer in in Little Rock when Red Line picked them up?

A. From the bill of lading contract, apparently in good order."

See *Ft. Smith Cotton Oil Co.* v. *Swift & Co.*, 197 Ark. 594, 124 S. W. 2d 1; also *VTR, Inc.* v. *Tolbert*, 240 Ark. 31, 397 S. W. 2d 807.

The effect of a recital in a bill of lading that the goods are in "apparent good order" when received by the carrier amounts to *prima facie* proof of the true condition of the goods when received, but in *Railway Co.* v. *Neel*, 56 Ark. 279, 19 S. W. 963, this court said:

"The true rule, as it appears to us, is that the clause 'in apparent good order' refers only to the external condition of the goods, and as between the original parties is only *prima facie* proof of the true condition of the goods when received, like any other

recital or statement of fact in a receipt not amounting to a contract."

See also annotation in 33 A. L. R. 2d 867, § 3, including A. L. R. Later Case service to this annotation; also 14 Am. Jur., Carriers, § 619.

As to Red Line's second point, in relation to Cash, we conclude that the evidence made out a fact question for the court's determination when sitting as a jury, and that there was substantial evidence supporting the court's conclusion that the washer was delivered to Cash in a damaged condition, while the delivery receipt signed by an employee of Cash, recites "1 washer damaged." The undisputed testimony of O. S. Cash and Bruce Cash is substantial evidence that the packing crate as well as the washer were in a damaged condition when delivered by Red Line.

The reasoning applied by the United States Fifth Circuit Court of Appeals in *Reider* v. *Thompson,* 197 F. 2d 158, would appear applicable to the case at bar. *In Reider* the court said:

"* * * When packages are received by the carrier in acknowledged good external condition but are delivered by the carrier in a damaged or stained condition which could reasonably and logically be found to indicate that the discovered damage or deterioration of the contents resulted from the cause indicated by the condition of the external package, theretofore received in good condition, the trier of facts may infer from these circumstances that damage to the contents was occasioned by the negligence of the carrier in the respect indicated by the changed external condition of the package."

As to the judgment in favor of Hurley, we agree with Red Line that the judgment must be reversed. While Mr. Presson was questioned concerning the condition of the range and its crate when it was received in shipment by

Red Line, he did not answer the question. Mr. Wallace testified that the crate or container for the range appeared undamaged when it was delivered to Hurley in Warren, but that the range was found badly damaged when it was removed from the crate soon after delivery. There is no evidence at all that the range was in good condition when received by Red Line.

The judgment in favor of Cash & Sons L-P Gas Company is affirmed and the judgment in favor of Hurley Furniture & Hardware Co., Inc. is reversed, and that cause is remanded to the Bradley County Circuit Court for a new trial.

HARRIS, C. J., not participating.