**RED ARROW FREIGHT LINES, INC.,**
Appellant,

v.

Roy G. HOWE, Appellee.

No. 681.

Court of Civil Appeals of Texas,
Corpus Christi.

April 27, 1972.

Rehearing Denied May 25, 1972.

Head & Kendrick, Michael Kendrick, Jr., Corpus Christi, for appellant.

Davis, O'Connor & Pullen, Thomas J. Smith, San Antonio, for appellee.

## OPINION

BISSETT, Justice.

This is a concealed personal property damage suit brought by Roy G. Howe, a consignee, against Red Arrow Freight Lines, Inc., a common carrier, for damages to a television set alleged to have been caused by the carrier.

After a non-jury trial in the County Court of San Patricio County, Texas, the court awarded Roy G. Howe, hereinafter called "Consignee", damages in the sum of $200.00 and attorney's fees in the amount of $100.00. Red Arrow Freight Lines, Inc., hereinafter sometimes called "Carrier" and sometimes called "Red Arrow", has timely perfected an appeal from the judgment so rendered by the trial court. We affirm.

The following facts are undisputed: Consignee, in early 1970, ordered seven television sets from Central Distributing Company, San Antonio, Texas. On March 9, 1970, Central Distributing Company as consignor, delivered the sets to Carrier, at San Antonio, Texas, for shipment to Consignee in Aransas Pass, Texas. The shipment was intrastate. Each set was packed in a cardboard carton, the contents of which were concealed and the condition of which could not be determined by visible inspection of the outside of the carton. The cartons containing the television sets were delivered to Consignee by Carrier on March 17, 1970. When Consignee opened them it was discovered that the picture tube on one of the sets was broken. The damaged set was packed for shipment by the manufacturer at Franklin Park, Illinois. It was shipped by the manufacturer to Central Distributing Company via a combination of truck, rail and boat transportation. The carton containing the set arrived at the warehouse of Central Distributing Company about February 24, 1970, where it was stored until shipment was made to Consignee. It was delivered to Consignee unopened and in its original shipping carton. The Bill of Lading signed by Carrier's agent, in part, stated: "Received . . . from Central Distributing Company . . . the property described below in apparent good order except as noted (contents and condition of contents of packages unknown)". No exceptions are noted on the Bill of Lading. The Delivery Receipt,

signed by Consignee, in part, stated: "Received above described property in good condition, except as noted". There were no exceptions noted thereon. The damage to the television set amounted to $200.00.

Findings of fact were requested by Carrier and duly filed by the trial court. In addition to certain other findings, the trial court also found:

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;

"3. When said Motorola television set was delivered by Central Distributing Company to Red Arrow Freight Lines, Inc. the carton containing said television set was not damaged.

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;

5. When said Motorola television set was delivered to Roy G. Howe, the carton in which it was contained showed visible damage.

6. When the carton containing said Motorola television set was opened by Roy G. Howe, it contained a television set with a broken picture tube."

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;

Based on its findings of fact and its conclusion of law that Carrier was liable to Consignee for the damages to the television set, judgment was rendered in behalf of Consignee, as stated.

Mr. Newberger, the treasurer of Central Distributing Company who had been employed by that company for about six years preceding the trial, testified that the carton in which the damaged television set was packed was treated in the normal, usual and customary manner by the employees of Central Distributing Company; the normal, usual and customary procedure was that the carton would have been examined by an employee of Central Distributing Company when it was received and again when it was delivered to the carrier. Further, according to their standard operating procedure, the carton would not have been accepted if damage had been noticed when received, nor would it have been delivered to the carrier for shipment to a customer if damage to the carton had been discovered. He did not recall ever having personally seen the carton while it was in the shipper's warehouse, but he was familiar with the shipment made to Consignee and their usual business records pertinent thereto. He never saw anyone inspecting the carton. He did say "if there was outward damage to the carton as a matter of normal procedure we open the carton and inspect it and in my opinion we inspected it". He also said that, as a matter of usual practice, shipments are checked twice by Central Distributing Company's employees, first, when they are received and before they are placed in storage, and, second, before the shipments leave their loading dock. Also, he said that the carriers check the shipments and if there is any damage "they either refuse it or make a notation on the freight bill". He was quite positive that the carton was inspected by employees of Central Distributing Company and that no damage was noted by them, relying on the custom and standing orders of Central Distributing Company, plus his personal observation that he had seen the company's employees inspecting freight shipments on other occasions. He further stated that he did not have any reason to believe that the shipping carton in which the damaged set was packed was treated in any manner different from that prescribed by their usual customary and normal procedures.

Consignee was asked if there was any obvious damage to the carton when it was delivered to him. He answered: "Yes, there was, the corners were kind of caved in and one side or two sides were kind of pressed inward as though they had been bumped." Such exterior damage to the carton and its "caved in" side was in the immediate area of the broken picture tube. He did not unpack the carton immediately upon delivery because "the driver was in a hurry, said he didn't have time to wait and as soon as I uncrated it, if there was any damage call for an inspection."

Carrier, by proper points of error, challenges the judgment by asserting that the

implied findings (a) "the damaged television set was delivered to Red Arrow by Central Distributing Company (the shipper) in good condition," and (b) "the carton containing the damaged television set showed more visible damage when delivered to plaintiff than when delivered by Central Distributing Company (the shipper) to Red Arrow," are without support in the evidence, that the evidence is factually insufficient to support such implied findings, and that they are so contrary to the great weight of the credible evidence that they are manifestly unjust and should be set aside. In addition to the attack made on the implied findings, Carrier also contends that there was "no evidence" and "insufficient evidence" to support finding of fact No. 3, and alternatively, that such finding is so "contrary to the weight of the credible evidence that it is manifestly unjust and should be set aside". We have reviewed the record in its entirety and have carefully considered these points under the principles set out in Garza v. Alviar, 395 S.W.2d 821 (Tex.Sup.1965), In re King's Estate, 150 Tex. 662, 244 S.W.2d 660 (1951), Great American Reserve Insurance Company v. Sumner, 464 S.W.2d 212 (Tex. Civ.App.—Tyler 1971, writ ref'd n. r. e.) and in Swansey v. Lightfoot, 450 S.W.2d 755 (Tex.Civ.App.—Corpus Christi, 1969, n. w. h.).

Our Supreme Court, in Missouri Pacific Railroad Co. v. Elmore & Stahl, 368 S.W. 2d 99 (Tex.Sup.1963), said:

"Under the general common law rule, a shipper of goods by common carrier makes a prima facie case of carrier liability by showing that the shipment was in good condition when delivered to the carrier at place of origin and in damaged condition when delivered by the carrier at destination. The carrier may then escape responsibility for the damage only by showing that it was caused solely by one or more of four excepted perils: (1) an act of God; (2) the public enemy; (3) the fault of the shipper; or (4) the inherent nature of the goods themselves. Where the loss is not due to one of these specified causes, it is immaterial whether the carrier has exercised due care or was negligent. . . . "

Consignee had the burden of obtaining favorable findings establishing both liability and damages. Missouri Pacific R. Co. v. Whittenburg & Alston, 424 S.W.2d 427 (Tex.Sup.1968). In order to establish liability, Consignee was required to prove by sufficient evidence and to obtain fact findings of (1) delivery of the property to Carrier in good condition, and (2) receipt of the property by Consignee from Carrier in a damaged condition. The evidence is conclusive with respect to damage at destination, and there is an express finding that the property was in a damaged condition when Carrier delivered it to Consignee. It is also undisputed and there is an express finding that the amount of the damage was $200.00. No complaint is registered with respect to either of such express findings. The damage to the television set was not shown to have been caused by any of the excepted perils mentioned by the Supreme Court in *Elmore & Stahl,* supra. Consequently, a single question is presented: Did Roy G. Howe, the consignee, carry his burden of proof of establishing, by sufficient evidence, that the damaged television set was in good condition when it was delivered by Central Distributing Company to Red Arrow, the carrier?

In determining the answer to the question before us, we bear in mind that the condition of the television set at the time of delivery to Carrier may be established by circumstantial evidence, as well as by direct evidence. Of course, the circumstances proved must be such that necessary facts to support the judgment rendered reasonably follow from the circumstances, excluding guesswork, conjecture and speculation as to the existence of those necessary facts. Prudential Insurance Company of America v. Krayer, 366 S.W.2d 779 (Tex.Sup.1963); Buchanan v. American National Insurance Company, 446 S.W.2d 384 (Tex.Civ.App.—El Paso 1969, writ

ref'd n. r. e.); Republic National Life Insurance Co. v. Bullard, 399 S.W.2d 376 (Tex.Civ.App.—Houston 1st 1966, writ ref'd n. r. e.).

■ Moreover, the trier of facts is not only the judge of the facts and circumstances proven, but may also draw reasonable inferences and deductions from the evidence adduced before it. Its findings may not be disregarded if the record discloses any evidence of probative value which, with inferences that may be properly drawn, will reasonably support the same. Lynch v. Ricketts, 158 Tex. 487, 314 S.W. 2d 273 (1958). See 24 Tex.Jur.2d, Evidence, § 705, pp. 350–358.

■ The recital in the Bill of Lading that the property was received by Red Arrow "in apparent good order except as noted (contents and condition of contents unknown)" relates only to the condition of the outside of the shipping carton; it does not, of itself, establish the good condition of the contents of the carton, nor is such recital, standing alone, evidence as to the actual condition of the goods packed in the sealed container. Missouri Pacific Railroad Company v. Elmore & Stahl, 360 S. W.2d 839 (Tex.Civ.App.—San Antonio (1962), affirmed, 368 S.W.2d 99 (Tex. Sup.1963); Matthews-Carr v. Brown Exp., 217 S.W.2d 75 (Tex.Civ.App.—El Paso 1948, n. w. h.).

Consignee contends that the Bill of Lading, itself, at origin, together with proof of damage to the television set at destination, made out a prima facie case that the set was received by Carrier in good condition. He is supported in his position by International & G. N. R'y Co. v. Blanton, Nunnally & Co., 63 Tex. 109 (1885), and by Missouri Pacific Railroad Co. v. Trautmann Brothers, 301 S.W.2d 240 (Tex.Civ.App.—San Antonio 1957, writ ref'd n. r. e.), wherein the Court in the latter case, said:

"Shipper proved its prima facie case by introducing the bill of lading, which re-

ceipted on January 4, 1953, for the tomatoes in apparent good order at Laredo, Texas . . . The shipper proved its damages. This was proof of a prima facie case. Thompson v. Associated Growers of Brownsville, Tex.Civ.App., 162 S. W.2d 754. If, at that point, the carrier had done nothing, shipper would have had judgment, for shipper is under no duty to negative the existence of a defense. . . . "

The general rule is stated in 13 C.J.S. Carriers § 254d, p. 538 to be:

"No presumption exists that the goods were in good condition when delivered to the carrier. The presumption arises, however, from the fact of the receipt of the goods by the carrier without objection or exception noted in the bill of lading or shipping receipt, that as far as the condition was apparent on ordinary inspection the goods were in good condition. . . ."

In addition to the foregoing authorities, we believe that the cases of Yeckes-Eichenbaum, Inc. v. Texas Mexican Railway Company, 263 F.2d 791 (5th Cir. 1959), cert. denied, 361 U.S. 827, 80 S.Ct. 75, 4 L.Ed.2d 70, and Roadway Express, Inc. v. Naturalite, Inc., 435 S.W.2d 555 (Tex.Civ. App.—Eastland 1968, n. w. h.), are authority for affirming the judgment of the trial court. Both cases involved a breakage claim against a carrier for damages to merchandise packed in boxes or crates that concealed their contents from view. The recital in the Bill of Lading in each case was identical with the recital in this case. The crates or boxes were visibly damaged at destination in both cases, and when the boxes and crates were opened, it was learned that their contents were damaged. In neither case did the carrier overcome the prima facie case made out by the plaintiff by proof to overcome the presumption that the shipment was in the condition described in the Bill of Lading.

The reasoning of the court in Reider v. Thompson, 197 F.2d 158 (5th Cir. 1952), wherein it said:

" . . . when packages are received by the carrier in acknowledged good external condition but are delivered by the carrier in a damaged or stained condition which could reasonably and logically be found to indicate that the discovered damage or deterioration of the contents resulted from the cause indicated by the condition of the external package, theretofore received in good condition, the trier of facts may infer from these circumstances that damage to the contents was occasioned by the negligence of the carrier in the respect indicated by the changed external condition of the package. . . . ",

is applicable to the case at bar.

It would seem to us that when visible damage to a sealed carton in which goods are shipped is discovered at destination, such damage would be equally apparent at the point of delivery to the carrier if then existent. The signing of a bill of lading at the latter or shipping point without any notation of visible damage to the exterior of the shipping carton would indicate the absence of such damage at that time. It would naturally follow that if the carton was visibly damaged upon arrival at destination such damage must have been sustained in transit. This conclusion is strengthened by the fact that a carrier would, under normal conditions, refuse to accept the shipment if it was improperly packaged for shipment, or if already damaged, would note on the bill of lading therefor any damage to the carton that was then visible. Minneapolis Fire & Marine Ins. Co. v. Baltimore & O. R. Co., 53 N.W.2d 828 (Minn.Sup.1952) ; 33 A.L.R.2d 867; Red Line Transfer & Stor. Co. v. Cash & Sons L–P Gas Co., 472 S.W.2d 705 (Ark.Sup.1971) ; Textile Distributors, Inc. v. Roadway Express, Inc., 397 S.W.2d 760 (Mo.App.1965).

■ In our opinion, Consignee made out a prima facie case against Carrier when he introduced the Bill of Lading acknowledging receipt of the goods in apparent good order, and proved that the television set was in a damaged condition when it was delivered to him. We agree that the aforesaid recital in the Bill of Lading does not of itself establish the good condition of the television set packed therein at the time of receipt by the carrier. Such recital standing above refers primarily to the condition of the exterior of the shipping carton. However, such recital, together with proof of damage to the shipping carton when received at destination, and proof of actual damage to the contents thereof constitutes proof that the contents of the carton were delivered to the carrier in good condition and that the damage discovered at the point of destination occurred during the period of shipment. Yeckes-Eichenbaum, Inc. v. Texas Mexican Railway Company, supra; Roadway Express, Inc. v. Naturalite, Inc., supra. Such proof can be overcome only by proof to the contrary.

In the instant case, after Consignee made out its prima facie case, Carrier attempted to rebut the presumption that the television set was in good condition when delivered to it. Mr. Raymond G. Adams, the Red Arrow agent in Aransas Pass, stated that he inspected the carton after damages had been reported and that while there might have been some slight damage to the outside of the carton, there was no more damage to this particular carton than was normal. Mr. Wingerter, Carrier's supervisor at Corpus Christi, Texas, testified that the cartons in an incoming shipment are inspected by employees of Red Arrow for visible or obvious damage, but the contents are not inspected. He also stated that as far as he was concerned there was no more apparent damage to the carton when the carrier picked it up in San Antonio than when it was delivered to Consignee. Presumably, no one in Red Arrow's

warehouse in Corpus Christi reported damage to the carton.

There is no testimony in the record from any witness who actually saw the shipping carton in Central Distributing Company's warehouse. It is conclusively established that the carton was not opened or its contents examined at that warehouse. The only evidence offered at the trial relating to the condition of the carton (in which the television set was packed) at origin of shipment was circumstantial.

■ The Delivery Receipt, signed by Consignee, does not establish, as a matter of law, that the television set was in good condition when it was delivered to him. Strickland Transportation Co. v. International Aerial Map. Co., 423 S.W.2d 676 (Tex.Civ.App.—San Antonio 1968, n. w. h.).

There is no testimony in the record from Carrier's driver of the truck who picked the set up in San Antonio, nor is there any testimony from the driver of the truck who made delivery to Consignee. The carton was in the exclusive custody and control of Carrier from March 8, 1970 until March 17, 1970.

There is no express finding of fact by the trial court, and no finding in the judgment that the television set was in good condition when it was delivered to Carrier by Central Distributing Company. Therefore, the judgment that was rendered can be sustained only on the basis of an implied finding to that effect. A statement of facts has been filed in this Court. The trial court expressly found that the television set was delivered by Carrier to Consignee in a damaged condition and that the damages sustained amounted to $200.00. These findings were elements of Consignee's ground of recovery. They support the judgment. The trial court did not make any express findings of fact that would tend to support Carrier's theory of defense. There is no conflict between any of the express findings themselves or between them and the implied findings necessary to support the judgment. No additional findings were requested by Carrier and no exception was taken to those expressly made by the trial court.

■ While the trial court did not expressly find that the damaged television set was delivered to Carrier in good condition, it did find facts that would have justified an express finding to that effect. Under the record before us, we must presume, in support of the judgment, that the trial court impliedly found that the damaged television set was in good condition when it was delivered to Red Arrow by Central Distributing Company. Rule 299, Texas Rules of Civil Procedure; DeWitt v. Brooks, 143 Tex. 122, 182 S.W.2d 687 (1944); Bednarz v. State, 142 Tex. 138, 176 S.W.2d 562 (1944); McKenzie v. Carte, 385 S.W.2d 520 (Tex.Civ.App.—Corpus Christi 1964, writ ref'd n. r. e.); Electro-Hydraulics Corp. v. Special Equipment Engineers, Inc., 411 S.W.2d 382 (Tex.Civ.App.—Waco 1967, writ ref'd n. r. e.); O'Benar v. O'Benar, 410 S.W.2d 214, 217 (Tex.Civ.App.—Dallas 1966, writ dism'd); Pinson v. Dreymala, 320 S.W.2d 152, 155 (Tex.Civ.App.—Houston 1958, writ dism'd); Spencer-Sauer Lumber Co. v. Ballard, 98 S.W.2d 1054 (Tex.Civ.App.—San Antonio 1936, n. w. h.); 4 Tex.Jur. 2d, Appeal and Error—Civil, § 839, pp. 398–405.

■ The credibility of the witnesses and the weight to be given their testimony was for the trial court as the trier of facts. Mitchell's, Inc. v. Nelms, 454 S.W.2d 809 (Tex.Civ.App.—Dallas 1970, writ ref'd n. r. e.) and the many authorities therein cited. Our review is limited to a consideration of the record before us. We do not have the fact finding powers of a trial court. "We should uphold the trial court's findings unless they are manifestly erroneous, and not supported by any evidence of probative force, or are so against the weight and preponderance of the evidence as to be manifestly wrong. . . ." Dyer v. Caldcleugh & Powers, 392 S.W.2d 523

(Tex.Civ.App.—Corpus Christi 1965, writ ref'd n. r. e.). See also Kolbo v. Blair, 379 S.W.2d 125, 130 (Tex.Civ.App.—Corpus Christi 1964, writ ref'd n. r. e.); Heard v. City of Dallas, 456 S.W.2d 440 (Tex.Civ. App.—Dallas, 1970, writ ref'd n. r. e.).

From our review of the record, we conclude that there was ample evidence, when viewed as a whole, to support all express findings of fact made by the trial judge and all implied findings necessary to support the judgment. The evidence presented by Carrier was not sufficient to overcome and rebut the prima facie case made by Consignee. We have considered all of Carrier's points of error and they are all overruled.

The judgment of the trial court is affirmed.

SHARPE, Justice (dissenting).

I respectfully dissent. I would sustain the basic contention of appellant carrier that there was no evidence to support a finding that the television set (which was shown to be damaged at destination) was delivered at San Antonio to Red Arrow, the carrier, by Central Distributing Company, the shipper, in good condition.

The majority opinion concedes that "There is no testimony in the record from any witness who actually saw the shipping carton in Central Distributing Company's warehouse. It is conclusively established that the carton was not opened or its contents examined at that warehouse. The only evidence offered at the trial relating to the condition of the carton (in which the television set was packed) at origin of shipment was circumstantial."

The evidence shows that the damaged television set was packed for shipment by the manufacturer at Franklin Park, Illinois, and was then shipped to Central Distributing Company at San Antonio, Texas, by a combination of truck, rail and boat transportation. The set arrived at San Antonio about February 24, 1970 where it was stored until March 9, 1970, when shipment was made to the consignee, appellee here.

There is no evidence of probative value to show the condition of either the carton or its contents (the television set) at San Antonio. In particular, there is no evidence to show the good condition of the television set at San Antonio. The consignee-appellee tried his case in such a way as to require a finding of good condition of the television set (the contents of the carton) at San Antonio when it was delivered to appellant-shipper. In my view, appellee failed to offer any evidence of probative force to establish such good condition of the set at origin.

The case of Missouri Pacific Railroad Company v. Elmore and Stahl, 360 S.W.2d 839, 842, 843 (Tex.Civ.App., San Antonio 1962) insofar as it involves Count II of the petition there is closely in point. A comparison of the evidence in the cited case, which was held insufficient to establish good condition of the shipment (honey dew melons) with that in the instant case leads to the conclusion that the evidence here is also legally insufficient to establish good condition of the television set when it was received by the appellant carrier at San Antonio. It should also be noted that the judgment in the cited case was final as to Count II thereof, and the further appellate court decisions related only to Count I of the petition.

For the reasons stated I would reverse the judgment of the trial court and render a take-nothing judgment in favor of appellant.