**DYESS v. WEST'S ESTATE et al.**

No. 12459.

Court of Civil Appeals of Texas. Galveston.

March 5, 1953.

Rehearing Denied May 14, 1953.

Dyess, Dyess & Jennings and Arthur D. Dyess, Jr., of Houston, for appellant.

Platt, West & Stevenson, J. A. Platt, Philip M. Stevenson, Arthur Platt, Jr., W. H. Skipwith, Jr., De Lange, Hudspeth & Pitman, Albert J. De Lange, C. M. Hudspeth and Eugene J. Pitman, all of Houston, for appellees.

MONTEITH, Chief Justice.

This trespass to try title suit was brought by appellant, A. D. Dyess, for recovery from appellees, the J. M. West Estate et al. of the title to a tract of land described as being a part of the Slone's Subdivision of the B. W. Camp Rice Farms in the John Dickinson League Survey in Galveston County, Texas. Appellees answered by a general denial, a plea of not guilty, and special pleas of the two, three, four, five and ten years statutes of limitation, including a special ten year plea under muniments of title. Appellees claim title to the land in controversy under J. M. West, deceased. They filed a cross-action to quiet title and to remove cloud.

In answer to two special issues submitted, covering the five and ten years statutes of limitations, the jury retuned their verdict in favor of appellees, and the trial court rendered judgment denying appellant any recovery and quieting title in appellees to the land in controversy.

Appellant relies on five points of assigned error. He contends that under the undisputed evidence, appellees had not openly appropriated the use of the land in controversy under a claim of right hostile to appellees' claim under the five and ten year statutes of limitations and that the trial court had erred in instructing the jury that in order to find that the defendants used the land in controversy as a pasture for grazing purposes, as set forth in Special Issues Nos. 1 and 2, it was not necessary that they find that the cattle actually went on the particular land in controversy each day, if they were free to do so from other portions of the pasture in which they were confined.

It was undisputed in the record that the title to the land in controversy had regularly passed into Thomas H. Slone on November 14, 1922, and that J. M. West held and claimed said land under a deed from J. H. Ross, dated April 2, 1934, conveying, for a valuable consideration, the entire property in controversy. The West Estate, and J. M. West prior to his death, had regularly paid all taxes on such property before they became delinquent for the years beginning with 1935 and continuing through 1951. J. M. West and appellees had regularly assessed said property with all taxing authorities, beginning as early as 1940. Appellant claimed the land under a deed from Ross, dated March 16, 1931, conveying the surface of the property in controversy. Appellant's deed was not filed for record until May 21, 1946. J. M. West and appellees were in possession of the property in controversy from as early as 1934 to date, using it as a pasture. The 40 acres in controversy was part of a larger tract within the same general enclosure. The area enclosed was 250 acres, more or less.

The 40 acres in controversy is an exterior tract of the West enclosure. It is bounded on the north by Chigger Bayou and Clear Creek and is enclosed by a fence on the east and west sides. The evidence shows that Chigger Bayou and Clear Creek were sufficient at all material times to retain cattle.

It is undisputed in the record that the use of said land by J. M. West and appellees to the time of trial was principally that of grazing and feeding cattle.

The title to the Dickinson Survey passed out of the sovereignty of the soil prior to any date material here. The Slone Subdivision of which the property in controversy is a part is out of the original Lot 1 of a subdivision of the Dickinson Survey.

It was established by a number of witnesses introduced by appellees that the east side of the land in controversy was continuously enclosed by cattle proof fences

and natural barriers and that on the land known as the West pasture, in which the land in controversy was enclosed, cattle had been kept for more than ten years.

Various herds of cattle have been on the property continuously from 1933 to the date of the trial.

Earl Johnson testified that he went to the vicinity of the property in December, 1937, to do ranch work for West. He testified that to his knowledge the fences on the property had been maintained on the south side of this pasture since 1937, and that the entire property had been pastured from 1937 continuously to date, that it had been fenced with cattle-proof wire, and that all the property known as the West Pasture had West Cattle on it when he came in 1937, and that to his own knowledge such cattle have been continuously on this land since that time.

A. F. Parker testified that he was ranch foreman for West in 1933, that he had held the position of ranch foreman continuously since his employment, and that throughout that period of time cattle had been kept in the pasture continuously by West and appellees.

J. H. Ross testified that he was entirely familiar with the property, including all of the Slone's First Subdivision, that he had conveyed the property to appellant on March 16, 1931, reserving all mineral rights. That later he conveyed the same land to J. M. West.

In the case of Burnham v. Hardy Oil Co., 108 Tex. 555, 195 S.W. 1139, 1146, the Supreme Court of this State held that "The Land and Cattle Company having maintained continuous occupancy and use of the land, under a registered deed, with the taxes regularly paid, for more than five years before the filing of the suit, the only question left in the case as related to limitation of five years against the plaintiffs referred to, is the sufficiency of the fences of the enclosure within which the land lay. Temporary breaks in the enclosure do not arrest limitation." (Citing authorities.)

The following authorities are in accord with the rule announced in Burnham v. Hardy Oil Co., supra: Church v. Waggon-er, 78 Tex. 200, 14 S.W. 581; Taliaferro v. Butler, 77 Tex. 578, 14 S.W. 191; Vergara v. Myers, Tex.Com.App., 239 S.W. 942; Parker v. Newberry, 83 Tex. 428, 18 S.W. 815; Broughton v. Humble Oil & Refining Company, Tex.Civ.App., 105 S.W.2d 480, writ refused; Cunningham v. Mathews, Tex.Civ.App., 57 S.W. 1114; and Houston Oil Co. of Texas v. Stepney, Tex.Civ.App., 187 S.W. 1078.

The case of Taliaferro v. Butler, supra [77 Tex. 578, 14 S.W. 193], was a trespass to try title suit, brought for the recovery of ⅔ of a league and one labor of land patented to Ticknor. Defendant Butler claimed one subdivision, containing 694 acres, and another one containing 2,029 acres, less 186 acres sold by him to his co-defendant, Pace, who claimed the remaining subdivision, containing 347 acres. With respect to the limitation claim by Butler to certain portions, the Court said: The evidence shows that subdivision No. 3 joins subdivision No. 1 on its north and west sides; that Butler resided on No. 1, and had around No. 1, and other land, a fence embracing about 3,500 acres and that within this enclosure there was about 200 acres of No. 3 that joined the north and west sides of No. 1. The Court, in its opinion said, "* * * We think that the court correctly held that such possession made the plea of limitation applicable to the whole of subdivision No. 3. The proof shows that all of subdivision No. 3, except the 200 acres above mentioned, lies in another inclosure, containing about 50,000 acres; that all of the land in this pasture, except 8,000 or 10,000 acres, is owned by defendant Butler; that of the land in said inclosure not owned by him Butler has all except one or two small parcels, containing in the aggregate about 500 acres, leased from the owners; that three families live in this pasture on land owned by them, which they cultivate and use for pasture, their stock running at large in the pasture; * * * and have always done so since the inclosure of the pasture; that defendant Butler claimed all of the lands in this inclosure, except the 8,000 acres mentioned, as his own, and adversely to all other persons. We think that under these facts Butler is entitled to

be treated as holding adversely so much of subdivision No. 2 as is situated in the large pasture. * * *"

■ Under his fourth point, appellant contends that there was not sufficient evidence in the record to show that appellees had such open, visible and notorious possession of the land in controversy as to render their possession adverse as to said 40 acre tract in controversy, and that the trial court erred in not so holding.

The record shows that appellant did not make or dictate any exception to the instructions now complained of. Appellant's objections under this point were first made in appellant's amended motion for a new trial filed after the entry of judgment.

The court in his charge defined "adverse possession," "peaceable possession," and "Claim of right," and in his instruction said: "You are further instructed that in order to find that the defendants used the land in controversy as a pasture for grazing purposes, as that phrase is used in Special Issues Nos. 1 and 2, you must find and believe from a preponderance of the evidence that the land in controversy, either alone or with some other lands, was completely enclosed for any continuous period of ten consecutive years under Special Issue 1 or five consecutive years under Special Issue 2 before the 12th day of July, 1951, with a substantial fence or barrier capable of retaining and excluding cattle of ordinary disposition, and that the defendants pastured cattle within said enclosure, if any, for said period."

The record shows that the cattle were placed in the pasture by the West interests and that the cattle were actively and continuously maintained in the pasture.

In the case at bar West had open and exclusive possession under deed and payment of taxes.

Appellees rely on a recorded deed and hostile claim thereunder; the rendition and payment of taxes, a complete enclosure continuously maintained in cattle proof condition; and open, exclusive, and continuous use and possession of the land in controversy for more than fifteen years.

Under these facts and the verdict of the jury, appellant's contention in his fourth point cannot be sustained.

■ Under his fifth point appellant contends that the trial court erred in instructing the jury in connection with the two special issues submitted to the jury that it was not necessary that they find that the cattle actually were on the particular land in controversy if they were free to do so from other portions of the pasture in which they were confined.

The record shows that appellant did not make or dictate any objections to the instructions complained of and that his objection to the instruction was first made in his amended motion for a new trial filed after the entry of the judgment.

■ In this case, J. M. West appears to be a mortgagee, peacefully in possession. The several deeds of trust executed by Mr. Dyess securing his indebtedness to Mr. West expressly provided that the loan was being made for the purpose of enabling mortgagor to acquire additional properties in Galveston County, particularly the orchard tracts out of the Gulf Coast Orchard Slone Subdivision of the John Dickinson League. It specifically provided that the liens should extend to each and every tract so acquired after crediting the amounts bid on all sales, the amount of the indebtedness owing by Mr. Dyess. The amount of the indebtedness was about $7,000.00. The record shows that no payment has been made.

In the case of Jasper State Bank v. Braswell, Com.App., opinion adopted by the Supreme Court, 130 Tex. 549, 111 S.W.2d 1079, 115 A.L.R. 329, the court said in effect that in Texas a mortgagee may be one lawfully in possession when he has taken possession peaceably either by consent or under a void foreclosure or without either, it being enough if the possession be peaceably and legally acquired. The court said that such possession of the mortgagee may be lawful though possession was not in recognition of the rights of the mortgagor but was hostile to such rights being in the character of that of a limitation claimant, citing Duke v. Reed,

64 Tex. 705 and Browne **v.** King, Tex.Civ. App., 196 S.W. 884.

Finding no reversible error, judgment is affirmed.

### Opinion on Rehearing

Appellant in the above entitled cause has filed a motion for rehearing and a motion for correction of statement and findings of fact.

In his motion for correction of statement of facts he contends that the Court erred in its original opinion in which it stated that it was established by a number of witnesses introduced by appellees that the east side of the land in controversy was continuously enclosed by cattle proof fences and natural barriers and that on the land known as the West pasture, in which the land in controversy was enclosed, cattle had been kept for more than ten years.

It is undisputed that West and appellees regularly paid all taxes on such property before delinquency for all years beginning with 1935 and continuing through 1951. Mr. West also assessed said property with all taxing authorities. As stated in original opinion appellant had deed from J. H. Ross dated March 16, 1931, conveying the surface of the property in controversy. This deed was not filed for record until May 21, 1946, and the record shows that appellant never rendered the property for taxes nor paid any taxes on it.

West had actual possession and use of the 40 acres in controversy continuously from as early as 1934 to date of the trial. The 40 acres in controversy being part of a pasture containing 250 acres of land.

The open, adverse and continuous possession of such property as a pasture for the West cattle and other livestock is, we think, conclusively established. Mr. West's intent to claim the property as his own and his actual claim and also the like intent and actual claim of his successors in title is, we think, conclusively established by his ac-ceptance and recording in 1934 of the deed to the property and regular rendition and payment of taxes, the continuous maintenance of enclosures and the use of the 250 acres which comprehended the 40 acres in controversy, as well as the testimony of J. H. Ross, appellant's vendor, as to the declarations and purposes of J. M. West, and the positive testimony of appellee Platt, called as an adverse witness by appellant. The 40 acres in controversy constituted the northerly portion of the enclosed area. Its northerly side was bounded by Clear Creek and Chigger Bayou. Its easterly line touched the fence which was the common line between West and Letzerich. A segment of the fence ran through the 40 acres just easterly of the west line thereof. There was no fence on the southerly side of the 40 acres separating it from the remainder of the 250 acre pasture. The southerly fence of the 250 acres was and is on the north border line of the League City-Friendswood Road. Such southerly pasture had as its northerly line a separate and distinct fence, which was on the southerly line of such road. The fence on the southerly boundary of the 250 acre pasture was clearly for the sole purpose of constituting a part of the enclosure of the 250 acre pasture, and throughout the periods of limitation above referred to, such southerly fence was maintained solely by appellees. West owned the record title to Lots 20, 21, 22, 2 and 3 forming thereby a continuous area of adjacent lots extending from the 40 acres to the League City-Friendswood Road.

From the above facts, we think that the record clearly shows that the land in controversy was continually enclosed for the necessary period of time to establish in appellees a limitation title to the land in controversy. Appellant's motion for rehearing is refused, and also appellant's motion for correction of statement and findings of fact is refused.