**Rosendo ARMENTA et ux., Appellants,**

**v.**

**W. V. NUSSBAUM, Appellee.**

**No. 925.**

Court of Civil Appeals of Texas,
Corpus Christi.

Feb. 27, 1975.

Rehearing Denied March 13, 1975.

Mark S. Levin, Alice, for appellants.

Charles E. Hamilton, Brownsville, for appellee.

# OPINION

NYE, Chief Justice.

This is a suit to set aside a trustee's sale and to remove the trustee's deed as a cloud on plaintiffs' title. Appellants contend that Article 3810, Vernon's Tex.Rev.Stat.Ann. (1966) is unconstitutional on its face because it does not require personal notice and a hearing and is, therefore, in violation of plaintiffs' constitutional rights under the 14th Amendment of the United States Constitution as to due process of law. The case was submitted to a jury on special issues with the jury returning a verdict for the defendant. The trial court entered judgment for defendant dissolving the temporary injunction heretofore granted to the plaintiffs and awarded defendant title and possession of the premises in question. From this judgment, appellants Armentas have perfected their appeal.

On September 21, 1972, Rosendo Armenta and Rosie Armenta hereinafter referred to as plaintiffs purchased a house from Florence Barron. The plaintiffs assumed the unpaid balance due on a promissory note in the sum of $6,500.00, made payable to J. S. Gleason, Jr., as administrator of Veterans Affairs. The note was secured by a deed of trust to D. W. Nash as trustee.

The plaintiffs contemporaneously executed a second lien deed of trust to D. D. Henderson, trustee, securing a note payable to Florence Barron in the sum of $2,892.45 to be paid in monthly installments of $25.-16, beginning November, 1972. This lien was subordinate to that lien securing the note payable to J. S. Gleason.

The transcript shows that written notice was sent to plaintiffs January 9, 1973, advising them that defendant W. V. Nussbaum had purchased the real estate lien note on the property and had received an assignment of the vendor's lien and deed of trust securing the same. The letter stated that the January 1, 1973 payment had not been received and advised the plaintiffs of the address to which all payments were thereafter to be made. On January 31, 1973, defendant again sent written notification to plaintiffs, this time by certified mail, advising that the plaintiffs' real estate lien note was past due and that all payments on the note be brought to date by February 10, 1973, so as to avoid legal procedures. The record shows that plaintiffs received such notice as Mrs. Armenta's signature appears on the return receipt.

On February 28, 1973, plaintiffs were again advised by certified mail, this time by Brownsville Title Company, that the holder of the note is William V. Nussbaum; that Nussbaum had advised them that the note was in default; that the property will be posted for a foreclosure on Tuesday, April 3, 1973, as indicated on the enclosed copy of the trustee's sale; and that if they did not wish their property to be sold at foreclosure to contact Mr. Nussbaum. This also was shown to be received by plaintiffs as their signatures appear on the return receipt. There appears nothing in the record showing that any payment by plaintiffs was made after January 1, 1973, nor was there any attempt by plaintiffs to cure such problem of their default.

On April 3, 1973, the trustee's sale took place. D. D. Henderson, as trustee, sold and conveyed to defendant W. V. Nussbaum said property in question.

The plaintiffs then brought suit against defendant Nussbaum seeking judgment setting aside the trustee's sale and removing the trustee's deed as a cloud on their title. Plaintiffs further sought judgment against the defendant for exemplary damages in the sum of $15,000.00 and asked that the trial court declare Art. 3810 unconstitutional on its face or in the alternative hold that the procedure utilized by defendant violated plaintiffs' constitutional rights.

The case was tried before a jury and all issues of fact were submitted on special issues. The jury found that: Nussbaum did not conceal significant facts from plain-

tiffs in connection with the foreclosure sale on April 3, 1973; that Nussbaum used means reasonably calculated to give plaintiffs actual notice that he was the transferee of the second lien note from plaintiffs to Florence Barron; that plaintiffs had actual notice that Nussbaum was the transferee of the second lien note from plaintiffs to Florence Barron and that he would require payment thereof; that Nussbaum, his agent, or attorney used means reasonably calculated to give Plaintiffs actual notice that their note was in default and their property would be posted for foreclosure; that the property in question was not sold for a grossly inadequate consideration at the trustee's sale on April 3, 1973; and that the reasonable monthly rental value of the premises in question during the period May 1, 1973, to April 1, 1974, is $130.00 per month. The trial court entered judgment accordingly for the defendant Nussbaum that he receive $1,430.-00 as reasonable rental value of the premises from plaintiffs for the time plaintiffs were in possession without making payments; ordered the temporary injunction originally granted to the plaintiffs dissolved; and granted Nussbaum title and possession of the premises in question.

▆▆ The plaintiffs failed to bring forward a statement of facts and none is filed in this case. It must be presumed that sufficient evidence was introduced to support all of the findings of the jury in absence of a statement of facts. Canion v. County of Jackson, 507 S.W.2d 814 (Tex.Civ.App.—Corpus Christi 1974, no writ); Red Arrow Freight Lines, Inc. v. Howe, 480 S. W.2d 281 (Tex.Civ.App.—Corpus Christi 1972, writ ref'd n. r. e.); Lane v. Fair Stores, 150 Tex. 566, 243 S.W.2d 683 (1951); City of Corpus Christi v. Gilley, 458 S.W.2d 124 (Tex.Civ.App.—Corpus Christi 1970, writ ref'd n. r. e.). Without a statement of facts appellate courts are limited in their review to generally those complaints involving (1) errors of law; (2) erroneous pleadings or rulings thereon;

(3) an erroneous charge; (4) irreconcilable conflicts of jury findings; (5) summary judgments; or (6) fundamental error. Since appellants' complaint does not involve any of the first five (5) listed problems, we must assume appellants are complaining of fundamental error. Mercer v. Mercer, 503 S.W.2d 395 (Tex.Civ.App.—Corpus Christi 1973, no writ). It has been held that fundamental error is an error which directly and adversely affects the interest of the public generally as that interest is declared by the statutes or constitution of our State. Fundamental error can be reviewed on appeal even though not assigned. Ramsey v. Dunlop, 146 Tex. 196, 205 S.W.2d 979 (1947) and McCauley v. Consolidated Underwriters, 157 Tex. 475, 304 S.W.2d 265 (1957).

Appellants' sole assignment of error is that the trial court erred in failing to hold that the procedure whereby plaintiffs' property was sold pursuant to Article 3810 violated plaintiffs' constitutional rights because they had never executed a valid consent to such procedure. The plaintiffs do not contend that they have a real defense to the foreclosure sale, only that they were denied the opportunity to contest the sale prior to the time it was held. During oral argument, the court asked the plaintiffs' attorney if there was any defense that they had to the sale that they were prevented from asserting in the trial court. Plaintiffs' attorney answered "No!"

▆▆ Although it is essential to insure the collection of debts, the procedure for enforcing those commercial obligations is subject to the countervailing constitutionally protected interest of the individual. Even if a valid debt exists, the state cannot establish arbitrary or unfair procedures for the enforcement of that debt because of the procedural due process requirement of the Fourteenth Amendment. While procedural due process does not invalidate the underlying obligation, it does demand that the obligation be pursued fairly. Arti-

cle 3810, Tex.Rev.Civ.Stat.Ann. (1966), provides as follows:

"All *sales of real estate made under powers conferred by any deed of trust or other contract lien shall be made in the county in which such real estate is situated.* Where such real estate is situated in more than one county then notices as herein provided shall be given in both or all of such counties, and the real estate may be sold in either county, and such notice shall designate the county where the real estate will be sold. Notice of such proposed sale shall be given by posting written notice thereof for three consecutive weeks prior to the day of sale in three public places in said county or counties, one of which shall be made at the courthouse door of the county in which such sale is to be made, and if such real estate be in more than one county, one at the courthouse door of each county in which said real estate may be situated, or the owner of such real estate may, upon written application, cause *the same to be sold as provided in said deed of trust or contract lien.* Such sale shall be made at public vendue between the hours of 10 o'clock a.m. and 4 o'clock p.m. of the first Tuesday in any month. When any such real estate is situated in an unorganized county, such sale shall be made in the county to which such unorganized county is attached for judicial purposes. Acts 1889, p. 143; G. L. vol. 9, p. 1171; Acts 1st C.S.1915, p. 32; Acts 1915, p. 84." (Emphasis added.)

The due process clause of the Fourteenth Amendment of the United States Constitution only prohibits "State action" as opposed to private action by providing that ". . . nor shall any State deprive any person of life, liberty, or property without due process of law." Although by private action, a party is not prohibited from seeking declaratory type relief before foreclosure, such individual right does not by constitutional law or by statute carry with it any obligation to give the debtor an opportunity to be heard as a matter of right on the probable validity of the underlying claim prior to the sale. Where such self-help action such as under a deed of trust sale does not constitute state action but rather only an individual invasion of individual rights, the alleged wrong cannot be remedied under the auspices of the Fourteenth Amendment.

Plaintiffs claim that such "statutory remedy" is carried out under color of state law. The concept of state action as required by the Fourteenth Amendment has been found to be virtually synonymous with the "under color of state law" requirement. See United States v. Price, 383 U.S. 787, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966).

The test then as to what constitutes "state action" is not merely that of state involvement, but rather significant state involvement. Adams v. Southern California First National Bank, 492 F.2d 324 (9th Cir. 1973); Moose Lodge v. Irvis, 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972). Article 3810 delineates the rights of parties to a deed of trust agreement which reserves a power of sale in a trustee in the event of default. Where a deed of trust agreement complies with Article 3810, and a sale is made in accordance with the statute (notice and location of sale requirements), then a transfer of title to real estate is effected. Article 3810 recognizes the power of sale vested in a trustee by a deed of trust agreement, but that power exists only by virtue of the private contractual arrangements between the parties to the agreement. The power is not "possessed by virtue of the state law" and the trustee is not "clothed with the authority of state law". Article 3810 merely establishes a minimum level of requirements on powers of sale conferred or granted by a private contract.

Article 3810 is not a statutory remedy as plaintiffs contend. It was in fact enacted for the protection of the debtor. See Wylie v. Hays, 114 Tex. 46, 263 S.W. 563

(Tex.Comm'nApp.1924, opinion adopted). It seemed apparent that both before and after 1889, the year in which the Texas Statute became a law, unrestricted powers of sale were being widely considered as an evil that was calculated to work against the public welfare, and were being progressively dealt with as such. There were instances reported in which deeds of trust dispensed with notice of sale, or provided for a place of sale beyond the boundaries of the county where the land was situated or left the selection of the place of sale to the trustee or mortgagee. These abuses and others called for the enactment of Article 3759 (Article 3810's predecessor).

The plaintiffs in their brief contend that the cases of Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972) and Hall v. Garson, 468 F.2d 845 (5th Cir. 1972) control this case. We disagree, such cases being clearly distinguishable from the case at bar. In Fuentes, supra, the court was dealing with prejudgment replevin statutes of Florida and Pennsylvania which gave the States the power to seize goods before final judgment to protect security interests of creditors. The Statutes were held unconstitutional because they denied the mortgagors the right or opportunity to be heard before chattels were taken from their possession. There was no question that there was state involvement in Fuentes. But we do not read Fuentes so broadly that it encompasses all private actions between individuals pursuant to their consensual undertakings. In Hall, supra, the court had before it the question of whether a statute giving a landlord a lien on personal goods of tenants and authorizing a landlord to enforce the lien by peremptory seizure of property was constitutional. Again, there was no question of state involvement in that such statute clothed the apartment owner with a clear statutory authority to enter into another's

home and seize property therein without the individual's consent, waiver or notice. This makes his actions those of the state.

The fact that the trustee in the case at bar acted with knowledge of Article 3810 and said deed of trust had terms complying with Article 3810 is not sufficient to establish significant state action or involvement. Statutes and laws regulate many, many forms of our private activities. To hold that any conduct which conforms to state law is "state action" would subject nearly all private activities to the constitutional limitations of the Fourteenth Amendment. See Adams v. Southern California First National Bank, supra, for example.

The question before us as to "State Involvement" is analogous to those situations challenging the constitutionality of the self-help provisions of the Texas version of the Uniform Commercial Code, Section 9.-503.[1] Six circuit courts of appeals to date have sustained the constitutionality of Section 9.503 self-help repossession without notice or hearing, finding insufficient state action to raise a due process question. Turner v. Impala Motors, 503 F.2d 607 (6th Cir. 1974); Gibbs v. Titelman, 502 F. 2d 1107 (3rd Cir. 1974); Shirley v. State National Bank of Connecticut, 493 F.2d 739 (2nd Cir. 1974); James v. Pinnix, 495 F.2d 206 (5th Cir. 1974); Calderon v. United Furniture Company, 505 F.2d 950 (5th Cir., opinion filed Dec. 30, 1974); Nowlin v. Professional Auto Sales, Inc., 496 F.2d 16 (8th Cir. 1974); Adams v. Southern California First National Bank, 492 F.2d 324 (9th Cir. 1973). The courts in the above cases criticized the fact that the appellants were trying to have them hold that the self-help repossession which takes place upon the default on a *private contract providing for such repossession* is an act under color of state law and thus constitutes state action within the scope of the Fourteenth Amendment. Turner v. Impala Motors, su-

---

1. Section 9.503, Vernon's Tex.Bus. & Comm. Code Ann., reads in relevant part:
   "Unless otherwise agreed a secured party has on default the right to take possession of the collateral. In taking possession a secured party may proceed without judicial process if this can be done without breach of the peace or may proceed by action."

pra. These courts concluded that it was clear that the state did not exert any control or compulsion over the creditor's decision to repossess.

Such situations are directly applicable to the case at bar. Here, the creditor (Nussbaum) simply relied upon the terms of the deed of trust agreement executed by the appellants pursuant to the private right of contract and did not seek to invoke any state machinery to his aid. The procedure challenged here involves only private actions arising out of the express written agreements between the parties.

■ There appears to be a further reason why plaintiffs cannot complain that their Fourteenth Amendment rights were violated. In order to complain about the constitutionality of a statute (Article 3810), the facts must be such so as to invoke the constitutional question, (assuming significant state involvement exists). But that is not the case here. We cannot and will not set aside the acts of the legislature in a suit of one who does not suffer from the alleged unconstitutional provisions but merely assumes to champion the alleged wrongs of others. See Oil Well Drilling Co. v. Associated Indemnity Corp., 153 Tex. 153, 264 S.W.2d 697 (1954); Houston Oil Co. of Texas v. Lawson, 175 S.W.2d 716 (Tex.Civ.App.—Galveston 1943, writ ref'd); Corey v. City of Dallas, 492 F.2d 496 (5th Cir. 1974).

We pause to note, however, the actual effect of striking down such a statute in these cases in which the sale under a deed of trust is challenged as violating a debtor's constitutional rights. If the statute (Article 3810) were held unconstitutional, a real disservice would be done to the debtor. It would not terminate or eliminate foreclosure by an exercise of power of sale. It would only eliminate the restrictions on that power of sale contained in the statute that are included for the benefit of the debtor. We would still have foreclosure pursuant to the contractual power of sale by consenting parties just as we had prior to the enactment of Article 3759 (Article 3810's predecessor). The end result would be less protection for the debtor, together with more expensive credit. We would obtain the opposite result to that which we are trying to and should try to attain.

■ The Courts of Texas have always sought to protect the individual debtor's rights against abuses while keeping in mind that the creditor also has rights that need protecting. In Crow v. Heath, 516 S.W.2d 225, decided by this Court in November, 1974, we held under the facts of that case that since the mortgagee did not give the requisite notice to the mortgagor, such irregularity coupled with inadequacy of consideration were sufficient to set aside the sale. See also other cases from this Court. Kolbo v. Blair, 379 S.W.2d 125 (Tex.Civ.App.—Corpus Christi 1964, writ ref'd n. r. e.); Prudential Corporation v. Bazaman, 512 S.W.2d 85 (Tex.Civ.App.—Corpus Christi 1974, no writ); Rio Delta Land Company v. Johnson, 475 S.W.2d 346 (Tex.Civ.App.—Corpus Christi 1971, writ ref'd n. r. e.). The remedy of foreclosure under a deed of trust is a harsh remedy and should not exist without its limitations and safeguards provided by the Statute (Article 3810). Plaintiffs in essence have asked that we strike down such limitation on the power of sale, thus leaving the debtor in a very unfavorable position. This, we cannot do. We hold that Article 3810 is not unconstitutional as contended.

The judgment of the trial court is affirmed.