**F L R CORPORATION, Appellant,**

v.

**Bill BLODGETT, Trustee, and Texas First Mortgage Reit, Appellees.**

No. 6516.

Court of Civil Appeals of Texas, El Paso.

Aug. 18, 1976.

Rehearing Denied Sept. 15, 1976.

Wendell S. Loomis, Houston, for appellant.

Vinson, Elkins, Searls, Connally & Smith, Kenneth E. Johns, Jr., John B. Holstead, Houston, for appellees.

## OPINION

OSBORN, Justice.

The Appellant, F L R Corporation, presents this appeal from an adverse judgment in a trespass to try title action and suit over a trustee's deed and a cross claim for a declaratory judgment as to the validity of a trustee's deed following a foreclosure sale. We affirm.

In September, 1970, Mr. Richard Olivere obtained an option to buy the 541-acre Flying L Ranch near Bandera for $754,000.00, with a down payment of $50,000.00 and the balance to be paid over six years. The sale was closed in June, 1971, and title was taken in F L R Corporation, a wholly owned subsidiary of 612 Corporation, in which Mr. Olivere was a stockholder and President at the time of the trial of this case. Most of the stockholders were New York investors. The property was described as a dude ranch with a landing strip, twelve cottages, a tack room, swimming pool and tennis courts at the time of the sale.

Mr. Olivere decided to fully develop the property by dividing it into lots for homesites, building the necessary roads, adding a golf course, club house, riding stable and small lake. An additional 167 acres of adjoining land was purchased to use in the development. In order to obtain the necessary capital, F L R obtained a $3,000,000.00 loan from Texas First Mortgage Real Estate Investment Trust (TFMR) on February 28, 1973. F L R executed a note and deed of trust along with an Assignment of Contract Rights and a Construction Loan Agreement. TFMR initially advanced $1,784,675.15 under the loan agreement. Additional advances increased the amount to $2,019,206.66. By making an assignment of Sales Contracts, F L R was able to obtain a loan in July, 1973, from FBS Financial for $1,105,000.00, of which $847,000.00 was paid on the note to TFMR. Shortly after development began, an energy crisis developed and inflation increased rapidly. The estimated cost of the planned club house went from $275,000.00 to $550,000.00, and the cost of most of the other development plans

increased in a like manner. TFMR refused to advance the funds for the club house because the contingency fund provided for in the loan was not sufficient to cover the cost increase, and the total projected development cost exceeded the available funds. With development stalled and problems in the national economy adversely affecting the land development market, F L R was in financial difficulty. Tax liens were filed on the ranch in the Spring of 1974. A number of property owners sued F L R when promised development was stopped. Defaults occurred under the deed of trust when lots were transferred without releases from TFMR and when second and third liens were placed on some of the land. The ranch operations were losing money each month, and it finally became necessary for TFMR to pay some monthly bills for operations to continue.

On May 13, 1974, TFMR posted notices for a trustee's sale on June 4, 1974. Late in the afternoon on June 3, 1974, F L R filed suit in Houston seeking a restraining order to enjoin the sale. Before the order was granted, counsel for TFMR appeared and requested a hearing. The district judge agreed to hear the matter the following morning. That evening, Mr. Olivere and his attorney flew to Brady and shortly after midnight, District Judge A. P. Allison granted a temporary restraining order. When counsel for TFMR arrived for the hearing in Houston on June 4, they were advised that F L R was taking a nonsuit. After learning of the order issued by Judge Allison, they requested a hearing which was set for that afternoon. While they were flying from Houston to Brady, counsel for F L R was flying back to Houston, unaware of the hearing scheduled for later in the day. At about 3:15 p. m., Judge Allison had a conference call with the attorneys in Houston for F L R and the attorneys for TFMR in Brady. At the conclusion of the "telephone hearing", the temporary restraining order was dissolved. Judge Allison had previously authorized the trustee to start reading the notice of sale. At 3:45 p. m., he authorized the completion of the sale. The sale was concluded at about 3:58 p. m.,

with TFMR bidding $950,000.00. Mr. Olivere actually bid $5,000.00 more, but he did not have any funds to complete the purchase.

Thereafter, F L R was dispossessed and TFMR took possession of the ranch. Subsequently, F L R filed this suit for title and possession of the ranch and damages. TFMR answered and filed a counterclaim for a declaratory judgment as to the validity and effect of the trustee's deed, a deficiency judgment and order to enjoin F L R from interfering with TFMR's ownership, possession and control of the Flying L Ranch. The claim for a deficiency judgment was nonsuited during trial. Following a jury verdict, judgment was entered that the trustee's deed was valid and effective to convey title to TFMR, and it was ordered that F L R take nothing on its claim for title and possession of the ranch.

■ By its first point, F L R complains of the trial Court's judgment on the trespass to try title issue in the case and urges that it has shown a superior title and possession from which it was forcibly evicted by TFMR. At the conclusion of F L R's case, the Court granted a motion for instructed verdict as to the 167-acre tract because the evidence established that F L R had previously parted with its title by a deed to Mr. Olivere, trustee for Majestic Garage Corporation. Having passed title to a third party and placed them in possession, F L R could not contend that it had possession up to the time it was dispossessed in June, 1974, following the trustee's sale. Continuous possession was essential to its claim by reason of its prior possession. *Land v. Turner*, 377 S.W.2d 181 (Tex.1964). Thus, we conclude that the trial Court properly granted the motion for instructed verdict as to the 167-acre tract.

■ A more difficult question arises as to the proof of title to the 541-acre tract. F L R made its claim of title from a common source by attempting to show that TFMR was holding under F L R. *Temple Lumber Co. v. Arnold*, 14 S.W.2d 926 (Tex.Civ.App. —Beaumont 1929, writ dism'd); *Jones v.*

*Parker,* 193 S.W.2d 863 (Tex.Civ.App.—Texarkana 1946, writ ref'd n. r. e.). As proof, it offered the deed of trust, dated February 28, 1973, given by F L R to secure the $3,000,000.00 loan to TFMR and then offered the substitute trustee's deed " * * not for proof of title, but for the proof of common source only, and for that limited purpose under the rules." See Rule 798, Tex.R.Civ.P. Although the exhibit is marked as Plaintiff's Exhibit 31 and Defendant's Exhibit 34, it was never offered by Defendant-Appellee as proof of its title. Mr. Blodgett, the substitute trustee, did testify as to the sale and the subsequent execution and filing of the deed. But, as a general rule, an interest in real property can be established only by a valid written instrument and not by parol evidence. *City of Mission v. Popplewell,* 156 Tex. 269, 294 S.W.2d 712 (1956); 56 Tex.Jur.2d, Trespass to Try Title, Section 125.

■ The general rule with regard to an instrument offered for a limited purpose is set forth in 56 Tex.Jur.2d, Trespass to Try Title, Section 128, as follows:

"The plaintiff has the right to introduce evidence for the purpose only of proving a common source of title, and where this is done, such evidence will not be considered for the purpose of showing title in the defendant, unless the evidence is introduced by him. This principle is also set forth by rule, where proof of common source is made by plaintiff by certified copies of deeds, as authorized. The result is that proof of common source may be made and, yet, there may be no evidence of title in the defendant. * * * "

This principle has been recognized and applied in cases holding that instruments showing a common source of title will not be considered for the purpose of showing title in the defendant, unless it is offered by him. *Bosse v. Cadwallader,* 86 Tex. 336, 24 S.W. 798 (1894); *Young v. Trahan,* 43 Tex. Civ.App. 611, 97 S.W. 147 (1906, writ ref'd); *Davis v. Gale,* 160 Tex. 309, 330 S.W.2d 610 (1960).

In *Hovel v. Kaufman,* 280 S.W. 185 (Tex. Comm'n App.1926, opinion adopted), the Court commented upon the language used in the *Bosse* case, and said:

"The correct rule is that, whenever a plaintiff, in a suit in trespass to try title, undertakes to sustain his claim of title by proof of common source, he must show, in order to make a prima facie case for himself, not only that both he and the defendant claim title under a common source, but also must show that the title emanating from the common source which the plaintiff claims is superior to that claimed by defendant, *and that plaintiff holds such title.* * * * " (Emphasis added).

\* \* \* \* \* \*

"The plaintiff in error having failed to show, before she rested her case, that she held the title to the land, the defendant in error was not placed under the necessity of introducing any proof at all, and the trial court properly instructed a verdict for the latter."

That decision was followed in *Tate v. Johnson,* 140 S.W.2d 288 (Tex.Civ.App.— Fort Worth 1940, writ dism'd jdgmt. cor.), where the Court said:

"It is contended that the court erred in entering judgment against plaintiff on the evidence introduced by plaintiff showing title in another, when the instruments were only offered for the purpose of showing common source. * * * "

\* \* \* \* \* \*

" * * * While in this case plaintiff did not trace the title into defendants, but he did, by his evidence, show that title had been divested out of himself.

"Plaintiff relies upon Article 7382, R.C.S., which in effect provides that evidence introduced by plaintiff to show common source cannot be considered as evidence of a title in defendant unless offered by him, yet in *Hovel v. Kaufman,* Tex.Com.App., 280 S.W. 185, at page 188, it was said: 'But this statutory provision in no wise precludes a consideration of such evidence for the purpose of determining if the plaintiff has discharged the

burden of proving that he really has title to the land as he claims to have.'

"It is a well settled rule of law in this State that in trespass to try title, plaintiff must recover, if at all, upon the strength of his own title. The burden is upon him to prove a prima facie right of title and possession; if he fails to discharge that burden he cannot recover, and where defendant is shown to be in possession, as in this case, judgment will be entered for the defendant. * * *"

Thus, we conclude that the trustee's deed which was offered for a limited purpose did not establish title in TFMR, but it did prove that F L R had parted with its title to the Ranch. Thus, having no title, it could not recover in this case.

There is yet another reason why the Appellant cannot prevail under the facts in this case. In *Jasper State Bank v. Braswell*, 130 Tex. 549, 111 S.W.2d 1079 (Tex. Comm'n App.1938, opinion adopted), the Court in an opinion by Commissioner Smedley said:

" * * * It is settled in this state that a mortgagee who has purchased the land at foreclosure sale, irregular or void as to the mortgagor (or as to one having title under the mortgagor), and who has taken possession under and in reliance upon such foreclosure and purchase, may retain possession against the suit of the mortgagor, or one holding under him, until his debt is paid. * * *"

The same result was reached in another opinion by Commissioner Smedley in *Connor Bros. v. Williams*, 130 Tex. 572, 112 S.W.2d 709 (Tex.Comm'n App.1938, opinion adopted). Both of those cases were followed in *Willoughby v. Jones*, 151 Tex. 435, 251 S.W.2d 508 (1952), where Justice Garwood writing for the Court said:

" * * * Although admittedly the petitioner upon his foreclosure purchase went into possession of the lands described in the petition of the respondents in the present case and is still in possession, respondents have not made a tender of the mortgage debt, which, at least in the ordinary case of a mortgagee in posses-

sion under a foreclosure void as to the mortgagor-plaintiff, would be a necessary prerequisite for a successful title action by the latter against the former. *Jasper State Bank v. Braswell*, 130 Tex. 549, 111 S.W.2d 1079, 115 A.L.R. 329; *Connor Bros. v. Williams*, 130 Tex. 572, 112 S.W.2d 709."

To the same effect are the holdings in *Dyess v. West's Estate*, 257 S.W.2d 737 (Tex.Civ.App.—Galveston 1953, writ ref'd n. r. e.); *Edinburg Theatres, Inc. v. Richter*, 367 S.W.2d 354 (Tex.Civ.App.—San Antonio 1963, no writ); *Whalen v. Etheridge*, 428 S.W.2d 824 (Tex.Civ.App.—San Antonio 1968, writ ref'd n. r. e.). The first point of error is overruled.

F L R next contends that the trustee's sale was invalid for several reasons which we shall note. First, it is contended that there was no notice of default, acceleration and foreclosure presented to F L R. On August 6, 1973, a letter was written to F L R advising of default. On December 6, 1973, another letter was written with regard to default. In addition to the written notices, there is substantial evidence of oral notice of default at other times prior to the foreclosure. The issue of acceleration was removed from the suit when TFMR took a nonsuit on its counterclaim for a deficiency judgment. The final judgment in this case did not provide for recovery of any sum of money and thus, there is no issue of acceleration and recovery for the full amount due on the note. With regard to notice of foreclosure, the evidence is undisputed that the substitute trustee did post the notices as provided for in the deed of trust. All of the claims with regard to lack of notice are without merit.

Next, it is urged that Bill Blodgett, the substitute trustee, was not of the same quality and independent character as the original trustees. As shown by the evidence, he was an agent and attorney for TFMR. The jury failed to find that, while acting as substitute trustee, he was under the exclusive direction and control of TFMR. There is no attack as such upon

that answer. The evidence indicates that he was properly appointed, complied with the law in conducting the sale, and the sale is not invalid because of any acts upon his part as trustee under the deed of trust.

It is further urged that the sale was invalid because it was commenced before the temporary restraining order was dissolved. Because of the action taken by F L R in deciding to go to Brady to get the temporary restraining order, rather than have the scheduled hearing in Houston, it was necessary for Judge Allison to act on short notice once a hearing was requested. He specifically authorized the trustee to commence reading the notice of sale and lengthy property description before the temporary restraining order was dissolved. Otherwise, the hearing would have been an exercise in futility because the notice and description could not have been read after the hearing was concluded at 3:45 and the sale completed by 4:00 p. m. as required by law. The controlling point is the fact that the jury found that the Court dissolved the temporary restraining order at 3:45 p. m. and the sale was completed at 3:58 p. m. No attack is made on those findings.

Lastly, it is contended that the consideration bid by TFMR was grossly inadequate. The jury failed to find that the trustee received grossly inadequate consideration for the property. We cannot say that such answer is clearly wrong, nor that an affirmative answer was established as a matter of law. It must be remembered that all construction had stopped, many promises to property owners were unfulfilled, the sale of lots had practically ceased, suits and liens had been filed and the project development was no longer viable. Point of error, number II, is overruled.

F L R next contends that the trial Court erred in issuing its verbal order dissolving the temporary restraining order. We find the point does not present reversible error for several reasons. First, at the time the temporary restraining order was signed, no pleadings had been filed and none were filed in Judge Allison's Court

until 9:10 a. m. the next morning. At that time, there was pending an identical suit in the 190th District Court in Harris County. "The general common law rule in Texas is that the court in which suit is first filed acquires dominant jurisdiction to the exclusion of other coordinate courts." *Curtis v. Gibbs*, 511 S.W.2d 263 (Tex.1974). Judge Allison, as a witness in this case, testified that he was not told at the midnight meeting that an identical suit was filed, and in fact set for hearing in Houston the next morning. In order to recognize that dominant jurisdiction, he took the only course available to him, and that was to dismiss the temporary restraining order. Of course, at that time the Houston suit had been nonsuited, and F L R was left with *no* case or time to seek a temporary restraining order before the sale was completed. But it was their choosing to file one suit, leave it and go elsewhere for relief and not tell the judge in Brady of the pending suit in Houston. Having made this bed, they must now sleep in it.

Rule 680, Tex.R.Civ.P., permits the adverse party, on such notice as the Court may prescribe, to move to dissolve the temporary restraining order and requires the Court to determine such motion as expeditiously as the ends of justice require. We believe the District Judge did as the rule requires, recognizing the position he had been placed in after learning of the Houston suit and the unavailability of counsel for F L R. At the conclusion of the telephone conference call, he determined that the temporary restraining order should be dissolved. One of the exhibits identified by Judge Allison was a copy of the order dissolving the temporary restraining order, bearing Judge Allison's signature, and reciting that the temporary restraining order was set aside and dissolved as of 3:45 p. m. on June 4, 1974. We find no error in the entry of that order. Point of error, number III, is overruled.

The next seven points are all presented without any citation of authority in support of them, but, nevertheless, we shall consider and pass on each of the

points. The fourth point complains of the jury's answers to Special Issues 12 and 13 and urges that those answers should be disregarded and this Court determine that the price bid at the sale was grossly inadequate. As previously noted, the jury in Issue 12 failed to find that the price bid at the trustee's sale was grossly inadequate consideration. The negative answer only means that F L R failed to carry its burden of proof on the issue. *C. & R. Transport, Inc. v. Campbell,* 406 S.W.2d 191 (Tex.1966). The contrary has not been established as a matter of law. Issue No. 13 as to market value was improperly worded, and the answer is meaningless, but it was an issue requested by F L R and to which it made no objection either to the issue or the answer. Thus, no error is presented. The point is overruled.

■ The next point urges that the trial Court erred in not disregarding the answer to Special Issue No. 2. The issue inquired if F L R submitted plans, specifications and cost of improvements for a club house to TFMR in June, 1973. The jury answered in the negative. Again, the answer only means a failure to carry the burden of proof on the issue. Although there was evidence to support an affirmative answer, we cannot say that such answer was established as a matter of law. Point of error, number V, is overruled.

■ Point of error, number VI, contends the trial Court erred in submitting Special Issues Nos. 15–26. First, the point is multifarious in attacking eleven unrelated issues. *Chemical Cleaning, Inc. v. Chemical Cleaning and Equipment Service, Inc.,* 456 S.W.2d 724 (Tex.Civ.App.—Beaumont), writ ref'd n. r. e. per curiam 462 S.W.2d 276 (Tex.1970); *Holzapfel v. Brueggman,* 404 S.W.2d 916 (Tex.Civ.App.—Corpus Christi 1966, writ ref'd n. r. e.). The argument only relates to three or four of the issues, and no authority is cited in support of the contention. The Appellant's objections to the charge are not included in the transcript with the judge's endorsement thereon as required by Rule 272, Tex.R.Civ.P., in a case tried prior to January 1, 1976. No

reversible error is shown. The point is overruled.

■ Point of error, number VII, complains of a failure to grant a mistrial during voir dire examination. There is no assignment of such error in the motion for new trial, and the complaint has been waived. Rules 324 and 325, Tex.R.Civ.P. The point is overruled.

■ The next two points urge error as shown at a hearing on jury misconduct. It does not reasonably appear from the evidence, both at the hearing of the motion and the trial of the case and from the record as a whole, that injury probably resulted to F.L.R. Rule 327, Tex.R.Civ.P. Where the trial Court, in ruling on a motion for new trial based upon jury misconduct, does not file express findings, it will be presumed on appeal that the Court found all controverted facts in support of the judgment overruling the motion for new trial, and that no misconduct occurred. *Brungs v. Consolidated Plan Service, Inc.,* 529 S.W.2d 79 (Tex.Civ.App.—San Antonio 1975, writ ref'd n. r. e.). Points of error VIII and IX are overruled.

■ The Appellant's tenth and final point complains that the trial Court erred in failing to grant a new trial on the basis of newly discovered evidence following the hearing on the motion for new trial. The motion is made with regard to the testimony of the one juror who signed an affidavit in connection with the claim of jury misconduct and which was attached to the motion for new trial. This juror was not one of the ten who signed the jury verdict. We have considered the contentions presented by the motion, and conclude that the trial Court did not err in overruling the motion. The point of error is overruled.

The judgment of the trial Court is affirmed.