Irene V. FORESTIER and Daniel N. Forestier, Appellants,

v.

SAN ANTONIO SAVINGS ASSOCIATION et al., Appellees.

No. 6717.

Court of Civil Appeals of Texas, El Paso.

March 15, 1978.

Motions for Rehearing of Appellant Irene V. Forestier and Appellant Daniel N. Forestier Denied April 12, 1978.

Tuck R. Chapin, Inc., Tuck R. Chapin, San Antonio, for appellants.

Sawtelle, Goode, Davidson & Troilo, P. C., John W. Goode, Jr., James M. Holbrook, San Antonio, for appellees.

## OPINION

WARD, Justice.

This is a summary judgment case arising from a non-judicial sale of real estate. Irene V. Forestier, one of the owners of the property, sued the noteholder, San Antonio Savings Association, and the Trustee of the deed of trust for damages, alleging wrongful foreclosure. Daniel N. Forestier filed what purports to be a cross-claim against San Antonio Savings Association, seeking damages or to set aside the Trustee's Sale. The Savings Association filed a counterclaim in trespass to try title against both Forestiers to quiet title and to establish its right to possession of the property. The trial Court then granted the Savings Association's motion for summary judgment as to the Forestiers' wrongful foreclosure actions, and further granted the Association's motion for summary judgment on its counterclaim for title and possession. We affirm.

Some detail of the background is necessary. The promissory note in question was executed in October, 1973, by Daniel N. Forestier and wife, Irene V. Forestier, and was payable to the San Antonio Savings Association in the principal sum of $198,-000.00; the note was payable in monthly installments and was secured by deed of trust to J. Maurice Smith, Trustee, covering property located at 330 Paseo Encinal in the City of Olmos Park in Bexar County. In November, 1975, the Forestiers defaulted in the payment of their monthly payments and the Savings Association threatened foreclosure. Prior to the institution of any foreclosure proceedings, the Forestiers filed suit against the Savings Association in Cause No. 75–CI–15260, alleging usury in the loan transaction. In that proceeding, a counterclaim was filed by the Savings Association for judicial foreclosure of the property. That lawsuit terminated on April 12, 1976, when it was compromised and settled, and an agreed final judgment was signed and entered by the Honorable Judge Peter Michael Curry. All of the parties and their attorneys in open Court executed a compromise and settlement agreement, a full release, and an agreement to postpone foreclosure.

Under the terms of the compromise and settlement agreement, the Savings Association agreed to and did (1) pay the Forestiers $125,000.00 in cash; (2) take a nonsuit on its counterclaim for a judicial foreclosure of the property; and (3) postpone its non-judicial foreclosure sale until January 4, 1977. During the ensuing period of nine months agreed upon, the Forestiers were permitted to retain possession of the property, enjoy all benefits of ownership, and were not required to make any payments on the mortgage loan or pay any taxes or insurance premiums on the property. Further, under the agreement to postpone foreclosure, the Forestiers acknowledged that they had made no payments on the mortgage loan and note to the Savings Association since October, 1975; that the note was in default; that the Savings Association had exercised its option to accelerate the maturity of the note and had declared the entire amount of the note to be due and payable; and that the Savings Association had the legal right to proceed with a trustee's foreclosure sale of the property. The Forestiers also agreed to the total amount due and owing to the Savings Association at that time, and further agreed to the formula to be used for determining the total amount that would be due and owing on December 1, 1976, and on January 1, 1977. That agreement further provided that the Forestiers would pay the entire amount of the debt to the Savings Association by December 1, 1976, and, if the debt was not paid in full, the Savings Association was given the right to proceed with the January 4, 1977 Trustee's Sale. The Forestiers were also given the right to pay the debt in full during the period from December 1, 1976, to January 1, 1977. The Forestiers further agreed not to interfere in any way with the January 4, 1977 Trustee's Sale, if such sale became necessary, and they agreed to the entry of a permanent injunction against them permanently enjoining them from interfering or attempting to restrain, enjoin, or interfere with the

January 4, 1977 Trustee's Sale. Said permanent injunction was contained in the final judgment entered in that case.

No payments were made by the Forestiers on or before December 1, 1976, and the Savings Association requested J. Maurice Smith, the Trustee under the deed of trust, to exercise his powers and to proceed with the foreclosure of the property. The Trustee thereafter posted notice and, on December 13th, a written notice of the proposed Trustee's Sale to be held January 4, 1977, was sent by certified mail addressed to Mr. and Mrs. Daniel N. Forestier at their residence at 330 Paseo Encinal in San Antonio, that being the most recent address shown in the Savings Association record.

█ Irene V. Forestier's first point is that the Trustee's Sale was voidable and illegally held because no statutory notice of sale was given to the Forestiers as required by Article 3810, Tex.Rev.Civ.Stat.Ann., it being urged that the Statute requires that two separate notices be mailed, one addressed to Mrs. Forestier at 330 Paseo Encinal and one addressed to Mr. Forestier at the same address. The summary judgment proof showed that marital difficulties between the Forestiers had arisen and that in November, 1976, Mrs. Forestier had moved from the property. She did not receive the notice, though she concedes that the most recent address shown by the records of the holder of the debt for each debtor was the 330 Paseo Encinal address. It is her argument that the Statute expressly requires that the holder of the debt serve written notice of the proposed sale by certified mail on each debtor obligated to pay such debt, and that two separate envelopes properly certified should have been sent to that address, one to Mr. Forestier and one to Mrs. Forestier. Such an argument under different circumstances was made in *Burnett v. Anderson,* 543 S.W.2d 15 (Tex.Civ.App.—Dallas 1976, no writ). Mrs. Forestier admitted that she and her husband had received actual notice of the Trustee's Sale more than twenty-one days preceding the date of the sale, since she had been so advised by her attorney on December 13th,

as he too had requested and received a copy of the actual notice. The amended Statute requiring that the written notice of the proposed sale be served by certified mail "on each debtor obligated to pay such debt" was passed in anticipation of further constitutional assaults on the old Statute. While the purpose of the amendment was to protect the debtor, the Statute continued to maintain merely the minimum level of requirements on powers of sale granted by private contract. To that extent, the purposes of the new and the old Statutes were the same. See *Armeta v. Nussbaum,* 519 S.W.2d 673 at 677 (Tex.Civ.App.—Corpus Christi 1975, writ ref'd n. r. e.). Therefore, since actual notice was given to this Appellant, both in the written agreement to postpone foreclosure and in the written notice given to her attorney who notified her of the contents of the notice, the first point is overruled.

On January 3, 1977, Mrs. Forestier instituted a divorce suit in Cause No. 77–CI–39 in the 73rd Judicial District Court of Bexar County and, on that date, the Honorable James C. Onion, Judge Presiding, signed and entered an order restraining and enjoining San Antonio Savings Association and J. Maurice Smith, Trustee, from conducting the Trustee's Sale on January 4, 1977. This order was granted at an ex parte hearing without notice; the order did not define the injury nor state why it was irreparable or why the order was granted without notice; and the order further recited that the requirements of bond were dispensed with in accordance with Rule 693a, Tex.R.Civ.P.

Service of the temporary restraining order was then made upon the Savings Association at 10:30 a. m., January 4th. The Association immediately filed a motion to dissolve the temporary restraining order, and their motion was presented to the Honorable Peter Michael Curry who set a hearing thereon at 2:00 p. m. Notice of this hearing was immediately served under Rule 21a, Tex.R.Civ.P., by delivering a copy of the notice to the office of the attorney of record, which was then open for business.

At the 2:00 p. m. hearing, Judge Curry, acting pursuant to Rule 680, Tex.R.Civ.P., heard the motion and signed and entered an order dissolving the temporary restraining order. Before 4:00 p. m., the Trustee proceeded to hold the sale and the property was sold to the Savings Association, the only bidder at the sale. After obtaining the temporary restraining order in the divorce case, Mrs. Forestier's attorney left for Mexico, and neither he nor Mrs. Forestier had actual notice of the 2:00 p. m. hearing on the motion to dissolve.

■ Mrs. Forestier's next point is to the effect that the temporary restraining order preventing the sale of her property was illegally dissolved because she had no notice of the hearing on dissolution and was therefore deprived of due process of law. Under the outlined facts, her position comes down to this: Can Mrs. Forestier who was permanently enjoined from "restraining, enjoining or interfering with the foreclosure" and who regardless of that obtained a temporary restraining order which was void on its face, and where her attorney voluntarily left the jurisdiction after obtaining the temporary relief without notice to the Savings Association, thereby deprive the Savings Association of its right to an immediate hearing to determine whether the temporary restraining order was properly granted? Obviously, she cannot and her point is overruled. Every restraining order must set forth the reasons for its issuance. Rule 683, Tex.R.Civ.P. A bond is required of the applicant and the order must state the amount of the bond which must be filed by the applicant. Rule 684, Tex.R.Civ.P. The failure of the trial Court to set out the reasons for the issuance of the temporary restraining order and the failure to fix the amount of the bond, together with the failure of the applicant to file the bond, rendered the order void ab initio. *Goodwin v. Goodwin*, 456 S.W.2d 885 (Tex.1970); *Lancaster v. Lancaster*, 155 Tex. 528, 291 S.W.2d 303 (1956); *Boren v. Bank of the West*, 535 S.W.2d 776 (Tex.Civ.App.—Amarillo 1976, no writ). Neither would such an order have supported any judgment for contempt. *Lancaster v. Lancaster, supra.*

The short notice of hearing ordered by Judge Curry on the motion to dissolve was justified by the facts. Rule 680, Tex.R. Civ.P.; *F L R Corporation v. Blodgett*, 541 S.W.2d 209 at 215 (Tex.Civ.App.—El Paso 1976, writ ref'd n. r. e.). The attorney obtained the temporary restraining order under the terms of that Rule, and he was charged with notice that the said order might be modified or dissolved pursuant to that same Rule. Mrs. Forestier's attorney and agent was properly notified of the dissolution hearing, and that notice was binding on her. The point is overruled.

■ As we understand the Appellant's next point, it is to the effect that the Trustee's Sale and all proceedings thereunder conducted under Article 3810, Tex.Rev.Civ. Stat.Ann., violated the due process provisions of the Federal and State Constitutions. As previously pointed out, notice was given to the Appellant's agent of the proceedings to dissolve the temporary restraining order. If there was any lack of actual notice to the Appellant, that can be charged to the fault of the Appellant and her own agent. If the Appellant's present point is an attack on the constitutionality of Article 3810, that attack is likewise overruled. *Armeta v. Nussbaum, supra* ; see 30 Sw.L.J. 49 (1976).

■ After Mrs. Forestier was notified by her attorney on December 13, 1976, that the Savings Association had posted notice and that foreclosure was imminent, the attorney, acting under Mrs. Forestier's instructions, wrote to the attorney of the Savings Association a letter dated December 15th in which he stated the following:

"* * * the Forestiers unconditionally tender to your offices all the lawful amounts due under the Compromise and Settlement Agreement reached between the parties. We do have a dispute with the total arrived at of $246,161.39, about which I will be in contact with you in the very near future. Because we have made an unconditional tender of the sum due, we would expect that you would instruct

your trustee not to proceed with the foreclosure sale on January 4, 1977; because if the sale should proceed, we will have no alternative but to restrain the sale, tender the funds that we claim were due into the registry of the Court, and litigate the matter further."

This alleged tender becomes the subject of Mrs. Forestier's next point in her claim that the sale was invalid. It was undisputed that no check or funds were ever produced by the attorney or by anyone else from which the payment could be made, nor were any funds ever paid into the registry of the Court by her when she filed her divorce suit and enjoined the Association. It was also undisputed that the Association did not reject any offer of tender. The purported offer of tender made in the letter falls short of the requirements of a valid tender, there being no unconditional offer to pay the specific sum due on the debt and no production of funds or their equivalent. *Baucum v. Great American Insurance Company of New York*, 370 S.W.2d 863 (Tex. 1963). The point is overruled.

Mrs. Forestier's next point is to the effect that the Trustee's Sale was void because the price paid by the Savings Association for the property at the Trustee's Sale was inequitably low. The rule is established that mere inadequacy of consideration alone does not render a foreclosure sale void if the sale was legally and fairly made. *Tarrant Savings Association v. Lucky Homes, Inc.*, 390 S.W.2d 473 (Tex. 1965). In *American Savings and Loan Association of Houston v. Musick*, 531 S.W.2d 581 (Tex.1975), the Supreme Court added another requirement that there "must be evidence of irregularity, though slight, which irregularity must have caused or contributed to cause the property to be sold for a grossly inadequate price." As previously pointed out, there was no irregularity in the Trustee's Sale. If the dissolution of the restraining order without Mrs. Forestier's actual knowledge could have caused the property to have been sold for an inequitably low price, that dissolution order, which was signed by Judge Curry, was not illegal, improper, or irregular and, as previously

pointed out, was caused solely by the uncalled-for actions of Mrs. Forestier and her agent. This point is also overruled.

The trial Court granted San Antonio Savings Association's motion for summary judgment on its counterclaim in trespass to try title, and Mrs. Forestier complains that there existed one or more genuine issues of fact which precluded the summary judgment. However, she fails to point out, either in the point itself or in the argument, any specific fact issue in the trespass to try title action. The Savings Association's trespass to try title action was based upon its summary judgment proof which consisted of its record fee simple title to the property by reason of the Trustee's Sale under the deed of trust executed by the Forestier's, the trustee's deed, and Daniel N. Forestier's admitted possession of the property after it was vacated by Mrs. Forestier. The real question in dispute has been the validity of the Trustee's Sale, and, as previously pointed out, that was a valid one. The trustee's deed therefore was valid and conveyed to the Savings Association record fee title to the property. This last point is overruled.

Daniel N. Forestier filed a separate brief whereby by reference he adopted all points, arguments and authorities as presented by Irene V. Forestier in her brief. Without additional discussion, all of those points are overruled.

We have considered all of the points presented by both Appellants, and they are all overruled. The judgment of the trial Court is affirmed.